ROCKFORD, ROCK ISLAND AND ST. LOUIS R. R. Co.

*v.*

GOTTLIEB BECKEMEIER.

1. COVENANT—*only lies against one who executes a deed.* An action of covenant will not lie against the grantee in a deed executed by the plaintiff, for a failure by the grantee, after accepting the deed and taking possession under it, to perform the conditions upon which the deed, as therein expressed, was executed.

2. PRACTICE—*time to object to form of action.* When a defendant fails to raise the question in the court below as to the sufficiency of the form of action, either by demurrer or by motion in arrest of judgment, he will be

regarded as having waived the objection, and will not be permitted to raise it for the first time in the Supreme Court.

3. Measure of damages—*for failure to fence railroad track and erect depot in consideration of right of way.* In a suit against a railroad company for a failure to erect a depot building upon the plaintiff's land, and also to erect a sufficient fence on each side of a strip of land conveyed by plaintiff, which it had undertaken to do in consideration of such conveyance to it, the value of such strip of land, and the damage occasioned to the balance of the farm by the failure to fence it, would be the natural and proximate damage which the plaintiff would be entitled to recover.

4. But any supposed damage to the farm on account of the failure to build the depot, growing out of anticipated increased value, is too remote to be considered a necessary consequence of the failure to build the depot, and for such damages no recovery can be had.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

Mr. LEVI DAVIS, Jr., for the appellant.

Mr. CHARLES P. WISE, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The declaration in this case consists of three counts in covenant. It counts on a deed poll, executed by plaintiff to defendant, for a strip of land through his farm. The consideration named in the deed was $325, and upon condition that defendant should erect a depot building upon the section of land upon which plaintiff's farm was situated, and near the north line of the farm, and also erect a sufficient fence on each side of the strip. The deed was delivered to and accepted by the defendant. It is averred that the company took possession and immediately built their railroad over the same, and has since used and possessed the same. It is then averred, that defendant, by accepting the deed and taking and holding the land, covenanted to perform the conditions in the deed. The breach negatives the performance of the conditions, and avers that defendant had failed and refused to build the depot, fences and cattle guards according to the terms of the covenants in the deed.

A trial was had, resulting in a verdict in favor of plaintiff, for $1975. After overruling a motion for a new trial, the court rendered a judgment for the amount of the verdict, and defendant appeals.

It is insisted that the action is misconceived; that whilst case or assumpsit might lie, covenant can not, inasmuch as this is but a deed poll, not executed by appellant; that a party can not become bound so as to be sued in covenant, unless he shall have executed the deed containing the covenants. On the other hand, it is claimed that by accepting the deed and availing of its benefits the grantee impliedly covenants to perform the terms and conditions upon which the grant is made; that an implied covenant may as readily arise as may an implied assumpsit.

In the case of *Burnett* v. *Lynch*, 5 Barn. & Cress. 589, it was held by the four judges of the King's Bench, that where a lessee, by deed poll, assigned his interest in the demised premises, subject to the payment of rent and the performance of the covenants in the lease, and the grantee of the lessee took and held possession of the premises and occupied them, and before the end of the term assigned to a third person, and the lessor having sued the lessee and recovered for a breach of the covenants, the lessee might maintain case against his grantee who held under the deed poll. It was there said, that the action of covenant could not be maintained, except against a person who, by himself or some other person acting on his behalf, has executed a deed, under seal, or who, under very peculiar circumstances, has agreed, by deed, to do a certain thing. It was also said: "Here, the defendant has not engaged, by deed, to perform the covenants, and, consequently, covenant will not lie."

The rule, as there stated, seems to be strictly in accordance with the general and well settled practice. It is true, that where the covenant is inherent, or runs with the land, the heirs, executors, administrators and assigns may be bound by such covenants. Shep. Touchstone, 177. But that is an exception to the general rule, and the case at bar does not fall

within the exception. We are, therefore, clearly of the opinion that this action was misconceived, and will not lie on the facts averred in the declaration or shown in proof on the trial.

In this case, however, the record fails to show that any demurrer was filed to the declaration, or a motion in arrest of judgment entered. Appellants having failed to question the sufficiency of the form of action, either by demurrer or by motion in arrest, they must be regarded as having waived the objection. A party, to avail of such an objection, must raise the question in the court below. He can not lie by in the court below, and raise it for the first time in this court. Had the objection been raised in that court, we will presume it would have been allowed, and appellee could have amended under the 23d sec. of the Practice Act, (Laws 1872, p. 342,) and thus have saved expense and delay.

It is objected that appellee was permitted to prove and recover damages not proximate or necessarily growing out of the breach, and which were not claimed in the declaration as special damages. If the land was conveyed, in whole or in part, on the consideration that the depot buildings would be erected, there would seem to be no doubt that the value of such portion of the land would be the natural and proximate injury growing out of a failure to comply with the agreement; and the failure to fence would necessarily, in a farm like this, produce inconvenience and loss in the use of the farm. Such would be the natural result of the omission, and appellee would be entitled to recover a fair and reasonable compensation for the injury thus sustained.

But the loss or injury claimed to have been sustained to the value of the farm, is manifestly not a natural result of the failure to build a depot. Any loss in the way of shipping his grain might be, but not the loss of anticipated increased value to the farm. Whether it would be a benefit to the farm, and increase its value, would, no doubt, depend on a great variety of circumstances, certainly too remote to say that it was a necessary consequence of the failure to build the depot. No one can know whether a town would be built at such a depot

or not, and even if such would have been the result, no one could predict its extent, or the increase, if any, it would impart to appellee's farm.

Again, unless the property was for sale we fail to see how damages have resulted in this respect. There is no evidence that the land is intended to be sold, and if not, we fail to comprehend how such damages can be ascertained or even can be sustained. Were the company to make the fences, crossings and cattle guards, the presumption is, the farm could be as profitably used, deducting the amount of land conveyed to the company, and it would be as productive, rent for as much, and be quite as useful without as with the depot erected. This is not, we think, an element of damage in the case. If it has produced injury, it is remote, uncertain, and altogether shadowy. The evidence to this point was improperly admitted, and, no doubt, prejudiced the rights of appellant.

As a means of proving the damage sustained by not fencing, appellee could show what would be a fair rental with the fences and what it would be worth without them; or it could be shown how much less, for use to the owner, the land would be worth for pasturage or cultivation without the fence, by reason of the danger of destroying stock; or the damage might be shown by a variety of modes, leaving the jury to determine the true loss sustained, but in doing so not being bound to follow any particular mode, the true question being, what amount of damage appellee has sustained, and the sum of money that will compensate him for his actual loss.

But for the error indicated, the judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*