McCormick v. Seeberger.

73    87
178s 404
73    87
86   245

## Leander J. McCormick v. Anthony F. Seeberger et al.

1. CORPORATIONS—*Liability of Person Who Assumes to Act for a Corporation Without Authority to Do So.*—A person who assumes to contract in the name of a corporation, without power so to do, whether such lack of power be due to the fact that there is no such corporation in existence in contemplation of law, to lack of authority on the part of the agent, or to lack of capacity on the part of the corporation to enter into the contract, may in each case be held liable to the party with whom the contract is attempted to be made, to make good the loss to such party by reason of his inability to enforce the contract as against the corporation.

2. SAME—*Directors not Liable for Mistake of Law.*—If a contract is entered into by the directors of a corporation and another under a mutual misapprehension as to the powers of the corporation under the law, such mutual mistake does not operate to render the directors individually liable.

3. SAME—*Persons Dealing With the Officers of a Corporation May Rely Upon Their Representations as to Their Authority.*—As between a person attempting to contract with a corporation and the officers of such corporation, professing authority on their part and capacity on the part of the corporation, such person may, if he chose, rely upon the representations of the officers as to matters peculiarly within their knowledge, without making any search of the records of a public office.

4. SAME—*Suits Against Officers for Wrongful Assumption of Authority—Former Suit Against Corporation as an Estoppel.*—Where a suit is brought against a corporation on a lease and it is held that no recovery can be had thereon and judgment is rendered for only an amount covering the benefit received by the corporation through its use of the premises, the plaintiff is not estopped from suing the officers of the corporation for a false assumption of authority.

5. SAME—*Officers of Acting Without Authority—Liability of as Partners.* Where organization has been perfected and a corporation exists in contemplation of law, directors of the corporation who have executed a lease in its name can not be held liable thereon as partners.

6. AGENTS—*Liability of Agent for Improper Assumption of Authority.*— If the principal is not bound by an instrument, the agent will not be bound thereby unless it contains apt words to charge him; although if he be of competent capacity to enter into a contract, he may be responsible in an action on the case for his negligent performance of his duty, or his improper assumption of authority.

7. SAME—*Liability of Agent for Representations as to Authority not Known to be True.*—An agent, who by false assumption of authority, induces another to enter into a contract, which as to the professed principal is void, is liable to the party injured, although the agent without bad faith, merely represented that which he did not know to be true, omitting to give such information to the other contracting party, as would enable him equally to judge as to the authority.

**Assumpsit,** for rent. Appeal from the Superior Court of Cook County, the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the October term, 1897. Reversed and judgment entered in this court. Opinion filed January 6, 1898.

## STATEMENT OF THE CASE.

This is a suit brought by appellant, L. J. McCormick, against Anthony F. Seeberger and others, appellees, who were directors of the so-called Market National Bank of Chicago, seeking to hold them individually for the damage suffered by reason of the refusal of the bank to perform the covenants and pay the rent due under a lease executed, under the direction of appellees, as the board of directors of said corporation, by the president and cashier thereof.

Suit was originally brought by McCormick in the Superior Court of Cook County against the Market National Bank as a corporation, to recover for rent due up to May 1, 1895, but he recovered judgment for rent due only up to August 15, 1893; the court refusing to render judgment for all the rent due on the ground that the execution of such a lease was *ultra*

*vires* and void, and that the complainant could not recover except for the time the premises were actually occupied by said bank. The judgment of the Superior Court was affirmed by the Appellate Court. 61 Ill. App. 33. The judgment of the Appellate Court was affirmed by the Supreme Court of Illinois. 162 Ill. 100. A writ of error was sued out from the Supreme Court of the United States and the judgment of the Supreme Court of Illinois was there affirmed.

It was held that although the corporation had proceeded in its organization far enough to constitute it a *de jure* corporation, yet that it had not received the formal certificate of the comptroller of the currency and could not, therefore, commence a banking business, and that the execution of the lease being incidental to a banking business, the transaction was null and void and the corporation was not bound.

The present suit was then brought against appellees, the directors of the bank, charging liability upon the ground that they had knowledge of and consented to the execution of the lease, and directed the same to be made. The cause was tried by the court without a jury, upon an agreed statement of facts, and resulted in a finding and judgment for the defendants, from which judgment this appeal is prosecuted. The agreed statement of facts is in part as follows:

That on January 31, 1893, Seeberger and others entered into articles of association for the purpose of forming a national bank, and elected Seeberger and other appellees as directors; Seeberger was elected president and William Cox cashier.

On the ninth day of February, A. D. 1893, Seeberger, in the name of the bank and as president thereof, in pursuance of a resolution of the directors of said bank, purporting by its terms to authorize him so to do, entered into a lease with plaintiff of offices in the city

of Chicago, to be used by said bank as a banking office, and for no other purpose, for the term of five years from the first day of May, A. D. 1893, to the thirty-first day of April, A. D. 1898, at the yearly rental of $13,000, payable in equal installments of $1,083.33 monthly.

Provision that landlord or tenant may cancel lease by ninety days' notice on May 1 of 1895, 1896 or 1897.

Some of the shareholders of said bank never paid any part of their subscriptions; others paid a portion. Of the entire capital stock of $1,000,000, no more than $331,594 was ever paid.

On June 22, 1893, the president and cashier of said Market National Bank took possession of the premises in question; possession of the same up to that time having been retained by McCormick, with consent and approval of the officers of said bank, for the purpose of putting them in condition, etc.

Prior to execution of lease, officers of the bank were elected, and a seal was made for said bank. Name of the bank was signed to lease by president and corporate seal attached by cashier. The officers of said bank from time to time corresponded with plaintiff, signing themselves in their official capacity, and used in such correspondence letterheads with name of the Market National Bank, its location and place of business, and the name of its officers printed thereon, and said letters were signed either by the president or cashier of said bank. Fixtures and furniture required for carrying on a banking business, also a quantity of blank books and stationery, the property of the bank, were not removed from said premises until April 30, 1895.

That said Market National Bank never was authorized by the comptroller of the currency to commence the business of banking, and never did commence the business of banking.

The said McCormick at the time of negotiations, prior to the execution of lease, and at the time of the execution of lease, and at the time when officers of bank took possession of the demised premises, understood and believed that the said Market National Bank was duly and legally organized as a national bank, and that as such it was ready to do a banking business, and that it had the power to enter into said lease and the agreements connected therewith, and had no knowledge or information to the contrary until the fifteenth day of August A. D. 1893, at which time the officers of the said bank informed said McCormick that said Market National Bank had no power to enter into said lease and offered to surrender to said McCormick said demised premises and said lease, and said McCormick was then and there informed by the said officers that said bank had never been authorized by the comptroller of the currency to commence the business of banking, but nevertheless said McCormick then and there refused to accept such surrender, and Seeberger then notified McCormick of the abandonment of all further proceedings with respect to the carrying on by the said bank of a banking business, and that the bank would not occupy the premises, and that McCormick was at liberty at any time to take possession thereof.

On July 15, 1893, the organizers of the bank executed and signed a certificate revoking their articles of association and organization certificate, and transmitted same to comptroller of the currency.

On January 3, 1895, McCormick notified Seeberger, as president of the bank, that he intended to terminate said lease on May 1, 1895, in accordance with the terms thereof.

The directors mentioned in articles of association were all shareholders in said association, and had full knowledge of and consented to the execution of said lease.

On the seventeenth of June, 1895, McCormick com-
menced in Superior Court of Cook County an action
of assumpsit against the bank to recover rents speci-
fied in lease to May 1, 1895, in which suit the cause
was submitted to court upon facts agreed upon, which
facts so agreed upon were the same facts as heretofore
set forth. And thereupon the Superior Court on July
16, 1895, rendered judgment in favor of McCormick,
and against the bank for $2,548.35; which judgment,
upon appeal of said McCormick, was thereafter, on
November 18, 1895, affirmed by the Appellate Court of
the First District, and said judgment of said Appellate
Court was thereafter, on June 11, 1896, upon the
further appeal of said McCormick affirmed by the
Supreme Court of Illinois; that said $2,548.35, for
which judgment was rendered, was amount of rent
unpaid and accruing under lease to August 15, 1893,
together with one-half the costs of changing offices and
building vault; and said courts held that McCormick
was not entitled to recover from said bank, as a cor-
poration, any rent under said lease, accruing subse-
quent to said fifteenth of August, 1893, and said or-
ganization known as the Market National Bank of
Chicago, as a corporation, had no power to execute the
lease in question. That the execution of said lease
was not incidental and necessarily preliminary to the
organization of said corporation; and that said corpo-
ration or organization had not been authorized by the
comptroller to commence the business of banking, and
had at no time authority to do any business except
such as was incidental and necessarily preliminary to
its organization, and that said lease after August 15,
1893, was not valid or binding upon said association as
a corporation.

This suit is brought against defendants by plaintiff,
who claims that defendants were, at time of the execu-

McCormick v. Seeberger.

tion of the lease, copartners, or joint obligors; and claims that defendants had the power as such copartners or joint obligors to bind themselves and did bind themselves for rent under the terms of said lease after August 15, 1893, to May 1, 1895. Defendants, however, deny that they were or are such copartners, or otherwise jointly liable, or that they were or are liable to plaintiff as such.

The foregoing facts shall be held to be competent evidence under the pleadings in this cause to the same extent that they would be under any form of pleadings. The intention of the parties being that under the pleadings in this cause the respective parties may establish any cause of action, or any defense that they could respectively establish under any form of pleadings.

If upon the foregoing facts the court is of the opinion that plaintiff is entitled to recover from defendants, or any of them, judgment is to be entered against such defendant or defendants for such sum as the court is of opinion that plaintiff is entitled to recover of and from such defendants. But if the court is of the opinion that the plaintiff is not entitled to recover of and from the defendants, or either of them, judgment is to be entered in favor of the defendants against the plaintiff. Aside from this stipulation no evidence was heard.

PENCE & CARPENTER, attorneys for appellant.

If the agent, either of a corporation or an individual, makes a contract which he has no authority to make, he binds himself personally, according to the terms of the contract. Wheeler v. Reed, 36 Ill. 91; Frankland v. Johnson, 147 Ill. 525; Loverin v. McLaughlin, 161 Ill. 435; Bigelow v. Gregory, 73 Ill. 197; Mott v.

Hicks, 1 Cow. 513; Angell on Corporations, Sec. 303; 1 Par. Con., p. 121.

That this principle applies not only to agents of individuals, but also as to agents and directors of corporations, is shown in the cases already cited and other cases, viz.: Loverin v. McLaughlin, 161 Ill. 423; Bigelow v. Gregory, 73 Ill. 197; Hurt v. Salisbury, 55 Mo. 310; Kaiser v. Lawrence Savings Bank, 56 Iowa, 104; Booth v. Wunderly, 36 N. J. Law, 250, 255; Garnett v. Richardson, 35 Ark. 144; Abbott v. Omaha Smelting & Refining Co., 4 Neb. 416; Coleman v. Coleman, 78 Ind. 344; Johnson v. Corser, 34 Minn. 355; 17 Am. and Eng. Ency. of Law, 866; 23 Am. and Eng. Ency. of Law, 875, 876; 1 Beach on Private Corp., Sec. 16; 1 Angell & Ames on Corp., Sec. 303; Cook on Stockholders, Secs. 233, 234; 236.

The following authorities show that directors are responsible, not only when the corporation is not completely organized, and hence not a *de jure* corporation, but also that they are liable when there is a *de jure* corporation, and where the directors exercise powers not conferred by the charter of such *de jure* corporation. Mechem on Agency, Secs. 342, 345; Medill v. Collier, 16 Ohio St. 599; Jefts v. York, 10 Cush. 392; Kroegor v. Pitcairn, 101 Pa. St. 311; Lasher v. Stimpson, 145 Pa. St. 30; Morse on Banking, 133; 1 Beach on Private Corp., Sec. 253; Richardson v. Wilson, L. R. 6 Q. B., 276; Collen v. Wright, 7 Ell. & Bl. 301; Cherry v. Colonial Bank, L. R. Priv. Council Appeals, 24; Downman v. Williams, 7 Q. B. 111; Beattie v. Lord Ebury, 7 Eng. & Irish App., H. L. 102, 111.

It is not disputed but that the officers and agents of corporations are protected from private liability while acting within the scope of corporate powers, but how far such protection is extended when they transcend the corporate authority, is not clearly defined. That

in such cases a personal liability exists, seems to be recognized in many cases in this and other States. Lawler v. Walker, 18 Ohio, 157; Kearny v. Buttles, 1 Ohio St. 362; Salem Bank v. Gloucester Bank, 17 Mass. 29; Lawler v. Burt, 7 Ohio St. 353; Fay v. Noble, 7 Cush. 188; Hood v. N. Y. & N. Haven R. R. Co., 22 Conn. 502. It is well settled that they who occasion injury to others by the fraudulent use of corporate powers are personally liable in damages therefor. Bartholomew v. Bentley, 15 Ohio 659; Bartholomew v. Bentley, 1 Ohio St. 37; Vose v. Grant, 15 Mass. 519; Trowbridge v. Scudder, 11 Cush. 83.

HIRAM T. GILBERT, attorney for appellees.

MR. JUSTICE SEARS DELIVERED THE OPINION OF THE COURT.

Upon the stipulated facts appellant contends that he is entitled to recover because it appears that appellees, claiming to be agents of a corporation and to have authority, made a contract with him in the name of the corporation, which contract they had no power to make, and therefore the contract being void as to their principal, appellees became liable by reason of having made it.

They who assume to contract in the name of a corporation, without power so to do, whether such lack of power be due to the fact that there is no such corporation in existence in contemplation of law, or to lack of authority on the part of the agents, or to lack of capacity on the part of the corporation to enter into such a contract, may be in each case held liable to the party with whom the contract is attempted to be made, to make good the loss to such party by reason of his inability to enforce the contract as against the corporation. The liability of such agents is, in the different cases reported, placed upon different grounds.

In a certain class of cases the agents are held as co-partners, and liable as such for obligations incurred in the name of the corporation.   Bigelow v. Gregory, 73 Ill. 197; Loverin v. McLaughlin, 161 Ill. 417.

In the latter case the court say: "Independently of Section 18, it is the law that a company, which is not a corporate body, is a partnership, composed not merely of the directors, but of all the subscribers to the articles of association who have not withdrawn. (Coleman v. Coleman, 78 Ind. 344; Bigelow v. Gregory, 73 Ill. 197; Hurt v. Salisbury, 55 Mo. 310.)   If a corporation be illegally formed, its members or stockholders are liable as partners for its acts or contracts; and directors, officers and agents, acting and contracting in its name, render themselves personally liable (1 Beach on Private Corporations, Sec. 16)."

In another class of cases, where contracts in writing are made, the principal not being liable thereon, the agents making the contract are held to be liable as parties to the instrument itself, and hence as principals. Frankland v. Johnson, 147 Ill. 520; Tippits v. Walker, 4 Mass. 595; Taft v. Brewster, 9 Johns. (N. Y.) 334; White v. Skinner, 13 Ib. 307; Duzenberry v. Ellis, 3 Johns. Cas. 70.

And in still another class of cases the agents are held to be liable for false assumption of authority, either upon an implied warranty of authority, as in some cases, or, as in other cases, for wrongfully and deceitfully inducing an innocent party to enter into a contract, which, as to the principal, is void.   Jenkins v. Hutchinson, 13 Ad. & El. (N. S.) 743; Smoot v. Ilbery, 10 Mees. & W. 1; Richardson v. Willson, 6 Q. B. (L. R.) 276; McHenry v. Duffield, 7 Blackf. 41; Ogden v. Raymond, 22 Conn. 385; Collen v. Wright, 7 El. & Bl. 301; Jefts v. York, 10 Cush. 392.

Of these, the English cases seem to have adopted the

theory of an implied warranty of authority; while the American cases, for the most part, insist upon recovery as for a tort.

Under the stipulation in this case all formal pleadings are waived, and we determine the question of liability of defendants upon any of these grounds from the stipulated facts alone.

That these directors can not be held as copartners, who have executed this lease, or caused it to be executed, in the course of a copartnership business, having merely usurped a corporate name under which to carry on a partnership business, seems to be settled by the fact that we have here a *de jure* corporation, the cases cited in support of the doctrine that they who assume to act in the name of a corporation and failing to bind the corporation, bind themselves as copartners, are almost exclusively cases where no corporation has existed, being largely cases of usurpation of corporate name, without such organization as in law created a corporation. No case is cited which holds that the officers or directors of a *de jure* corporation may be held as copartners doing business in a corporate name. In principle it would seem that it could not be so held, for it is the very lack of any corporation which makes it possible to hold the association of individuals as a copartnership. If Medil v. Collier, 16 Ohio St. 599, and Ridenour v. Mayo, 40 Ohio St. 9, can be regarded as holding a liability of trustees or directors, of a corporation completely organized, as copartners, they stand in that regard against the decided weight of authority. Against such doctrine is the authority of many decisions, among which are: Trowbridge v. Scudder, 11 Cush. 83; N. Y. Iron M. Co. v. Nat. Bank of Negaunee, 39 Mich. 644; First Nat. Bank v. Almy, 117 Mass. 476.

Our own Supreme Court, while holding that there may be a liability as copartners in cases of incomplete

organization, both under the statute and by common law, have never, so far as the cases cited show, held that there could be any such liability as copartners where organization had been perfected and a corporation existed in contemplation of law.

Neither can it be held that these defendants are liable as parties to this lease, and hence chargeable under its terms. Cases which hold agents as parties to and liable under the provisions of contracts, which they have executed in the name of the principal, whom the agents have no authority to bind, are cases where the contracts, if written, have been executed by the agents, though in their professed capacity as agents. In some such cases the decisions have held that the false description may be rejected, and the agents held as though they had executed in their own names alone. In the case here, however, the only defendants whose names appear upon the lease, and that as officers through whom the bank executed it, are Seeberger, who signed it as president, and Cox, who attested as cashier of the corporation. The other defendants did not sign at all. There can be here no theory of striking out a false description and holding the defendants as parties to and liable under the lease itself. Story on Agency, (9 Ed.), Sec. 273, note; Hancock v. Yunker, 83 Ill. 214.

Nor are there apt words in the lease by which the agents might be charged as principals. Story on Agency (9 Ed.), Sec. 274, b., wherein it is said: "In short, in all cases in order to bind the principal upon the instrument, there must be apt words to charge him; and, in like manner, if the principal is not bound by the instrument, the agent will not be bound thereby, unless it contains apt words also to charge him; although, if he be of competent capacity to enter into a contract, he may be responsible in an action on the case

for his negligent performance of his duty, or his improper assumption of authority."

It remains, therefore, only to inquire if appellees may be held for breach of an implied warranty of authority, or for wrongfully and deceitfully inducing appellant to make the lease. In either case, whether it be called an implied warranty or a tort, the basis is the false assumption of authority, and under the stipulation no question here arises as to form of action. While there is conflict of authority as to the precise ground of liability and the proper form of action upon which to hold the agents, who by false assumption of authority induce others to enter into contracts which, as to the professed principal, are void; yet, upon the proposition that a liability does exist, the authorities are substantially agreed. Of the decisions, some hold that the liability must, and substantially all hold that it may, be enforced upon the ground of the false assumption in an action on the case. And it is held that it may be so enforced although the agents, without bad faith, merely represented that which they did not know to be true, omitting to give such information to the other contracting party, as would enable him equally to judge as to the authority. Smoot v. Ilbery, *supra;* Collen v. Wright, *supra;* Mechem on Agency, 544, 545; 1 Beach on Private Corporations, 253; Duncan v. Niles, 32 Ill. 533. In which latter case the court say, passing upon a note executed by a county judge by which he attempted, without authority to bind the county: "We are inclined to think, with these authorities, that the contract is wholly void, and neither party can be held on it. Not the county, for they gave no authority to the judge to bind them; not the judge, for there are no apt words in it sufficient to bind him. If the defendant falsely represented himself as the agent of the

county, and authorized to obtain this money, and did so obtain it, he may be reached by a special action on the case for fraud, or in some other appropriate action, but not on the note itself, etc. Harper v. Little, 2 Greenl. (Me.) 14; Ogden v. Raymond, 22 Conn. 385; McHenry v. Duffield, 7 Blackf. 41; Hopkins v. Mahafy, 11 Serg. & R. 126; 1 Parsons on Contracts, 57.''

In Jefts v. York, 10 Cush. 393, Chief Justice Shaw, in delivering the opinion of the court, says: ''In the present case it seems to have been assumed, and if it had not, it seems to us clear as matter of law, that the church or the deacons of the church had no authority to give a promissory note, or enter into an executory contract for the payment of money, binding upon themselves and their successors, in their corporate capacity. The court are of opinion that where a person acting as agent borrows money for his principals, and gives their obligation for it, and it turns out that the principals were not of legal capacity to make such contract, and of course could confer no such power on another, the agent is not personally liable on the contract as his contract. This in effect was before decided in the same suit between these parties. 4 Cush. 371; Abbey v. Chase, 6 Cush. 54. But if in fact he was not so authorized, but under a belief that he was, and acted on such belief, and the party advancing the money did not know that he was not authorized, the agent would be liable in an action on the case, to an amount in damages equal to the sum advanced. If one falsely represents that he has an authority, by which another, relying on the representation, is misled, he is liable; and by acting as agent for another, when he is not, though he thinks he is, he tacitly and impliedly represents himself authorized, without knowing the fact to be true, it is in the nature of a false warranty, and he is liable. But in both cases his lia-

bility is founded on the ground of deceit, and the remedy is by action of tort."

Against this right of recovery counsel for appellees contend that one can not be held for breach of an implied warranty of authority, or for deceit, when the lack of authority was as well known to the one contracting party as to the other; and that here the want of power on the part of appellees to bind the bank by this lease was resultant from the failure of the corporation to procure the comptroller's certificate, and this being a matter of public record, must be held to have been as well known to appellant as to appellees.

The lack of capacity on the part of the bank is here peculiar, and does not fall within the facts of the reported cases. It is not analogous to cases where the organizers of a proposed corporation have failed to perfect the organization essential to create a corporation, for here we find a *de jure* corporation actually organized. Nor does it fall within the cases where officers of a corporation have undertaken to do that in the name of the corporation, which could not as a matter of law, possibly be within the scope of the corporate powers and could not in any event have been done by the corporation. Here the lack of power was not due solely to a limitation of law, but as well to the fact that a prerequisite act on the part of the organizers was lacking, the performance of which act would have resulted in vesting the corporation with the power. It has been frequently held that if the contract is entered into by the directors of a corporation and another, under a mutual misapprehension as to the limitation of the powers of the corporation by law, that such mutual mistake as to the law does not operate to render the directors individually liable. Mann v. Richardson, 66 Ill. 481.

And if it could be said here that the appellees and appellant, each having knowledge of the facts, had, by

a mistake of law, viz., by supposing that the bank
could lawfully enter into a binding contract of lease
without the certificate of the comptroller, thus entered
into this contract, which was void, we should then feel
constrained to hold that appellees were not liable for
the results of such mutual mistake. But it does not
appear from the stipulation that appellant had any such
actual knowledge of the fact that appellees had failed
to procure the comptroller's certificate. On the con-
trary it may be fairly inferred from the stipulation, that
this fact, at all times known to appellees, and resting
peculiarly within their knowledge, was first brought to
the actual knowledge of appellant upon August 15,
1893. The stipulation is in part as follows: "That
said McCormick, at the time of said negotiations, prior
to the execution of said lease, and at the time of the
execution of said lease, etc., understood and believed
that the said bank was duly and legally organized as a
national bank, and that as such it was ready to do a
banking business, and had power to enter into said
lease, etc., and had no knowledge or information to the
contrary until the 15th day of August, 1893, when the
officers of said bank informed said McCormick that
said bank had no power to enter into said lease, etc.,
and that said bank had never been authorized by the
comptroller of the currency to commence the business
of banking, etc."

But counsel for appellees contend that as the issu-
ing of the comptroller's certificate is a matter of public
record, therefore appellant must be held to have had
constructive notice that it had not been issued at the
time of the execution of the lease. In other words,
that it was the duty of appellant, before relying upon
the implied representations of appellees that they had
authority to make the lease in the name of the corpora-
tion, to have searched the records of the comptroller's

office to discover if such representations were true or false.   We do not so understand the authorities.   It is true that in dealing with the corporation, and as affecting the liability of the corporation, every one is pre-presumed to have notice of these public records. McCormick v. Market National Bank, 61 Ill. App. 33; Same v. Same, 162 Ill. 100; Same v. Same, 165 U. S. 538.   But it is nowhere held in any of these decisions that as between appellant and the officers, professing authority on their part and capacity on the part of the bank, any such rule of constructive notice applies; or that appellant might not, if he chose, rely upon the representations of appellees as to these matters, peculiarly within their knowledge, without making any search of the records of a public office, and without thereby becoming charged with such notice as would estop him from relying upon such representations. These decisions have no occasion to, nor do they, intimate any opinion upon this question.   But there is authority in point.   In Lasher v. Stimpson, 145 Pa. St. 30, the court say:   "A citizen of this State who has a business transaction with another as the agent of a foreign corporation, may rely on the representations of the agent as to his authority, without releasing him from his common law liability as principal, if it turns out that his action was unauthorized.   In other words, his failure to make search in the office of the secretary of the commonwealth for the statement which the corporation ought to file there, will not inure to the benefit of the person who falsely pretended that he was its duly constituted agent."   The corporation in question in that case was a foreign corporation, but the public records referred to were those of the State where the cause of action arose.   See, also, Clark v. Edgar, 84 Mo. 106.

And in all the  reported cases where organization

was incomplete, because of failure to file certificate and the like, it must have been impliedly held, in order to permit a recovery, that reliance might be placed in the representations of the directors or officers, and that no such constructive notice was chargeable as would defeat a recovery.

We are therefore led to the conclusion that the lack of authority on the part of appellees and the lack of capacity on the part of the bank, because of which this lease is void, arose not solely from a limitation of law, but as well from a failure on the part of appellees to perform an act, which, if performed, would have resulted in empowering the bank to lawfully execute the lease; that the fact of this failure to act on the part of appellees was a fact peculiarly within the knowledge of appellees, and not known to appellant; and that appellant can not be charged with constructive knowledge of this fact so as to estop him from charging liability upon appellees for their false assumption of authority; and that while appellees may not be held as copartners or as principals, they are yet liable for false assumption of authority.

But counsel for appellees contend that the recovery of the judgment in the case of McCormick v. Market National Bank is such an election to treat the corporation as the party liable under this lease, as will estop appellant from now setting up any individual liability of appellees. In support of this contention counsel cite Creswell v. Oberly, 17 Ill. App. 281, and Pochelu v. Kemper, 14 La. Ann. 308.

We regard these cases as clearly distinguishable from the case here. It will be observed that in each of these cases it was sought to hold the agent under the contract after having first sought to hold the principal, and after having succeeded in so doing to the extent of obtaining judgment. We find no rule announced in

McCormick v. Seeberger.

either of these cases to the effect that because appellant has heretofore sued the wrong party and failed, he may therefore not now sue the right party and succeed. But the ground of recovery here is not the same as that in McCormick v. Market National Bank. If it were, a different question might arise by reason of the partial recovery there. There the suit was brought upon the lease, but it was held that no recovery could be had upon the lease, and the judgment was only for an amount covering the benefit received by the bank through its use and occupation. Here the recovery must be based upon a false assumption of authority, and the recovery in the former case could have no effect save as to the measure of damages.

Counsel for appellees contend that under the stipulation no recovery can be had except upon the ground of a liability of appellees as copartners. We do not so interpret the stipulation. It is in part as follows (after reciting facts): "This suit is brought against the defendants by the plaintiff, who claims that the defendants were, at the time of the execution of said lease, copartners or joint obligors; and further claims that the defendants had the power as such copartners, or joint obligors, to bind themselves, and did bind themselves for the rent falling due under the terms of said lease after August 15, 1893, and up to May 1, 1895. The defendants, however, deny that they were or are such copartners, or otherwise jointly liable, or that they were or are liable to the plaintiff as such. The foregoing facts (referring to the entire stipulation) "shall be held to be competent evidence under the pleadings in this cause, to the same extent that they would be under any form of pleadings. The intention of the parties being that under the pleadings in this cause the respective parties may establish any cause of

action or any defense that they could respectively establish under any form of pleadings.''

Although these provisions recite the suit of plaintiff to have been brought to enforce a claim against defendants as copartners or joint obligors, and for the rent falling due under the lease, and the suit was in fact originally so brought and declaration filed, yet the subsequent clause clearly indicates that it was the intent of the parties to waive any such limitation of the right of recovery as might result from the form of action or the declaration, and to permit any recovery which might be warranted upon the stipulated facts under any pleadings and in any form of action.

We conclude, therefore, that appellant should recover against appellees, upon the stipulated facts, for the damages resulting from the false assumption of authority, and that upon these stipulated facts the damages are fairly determinable from the amount of rent which is provided for in the lease. The fact that the parties to the suit and stipulation, by the making of the lease, did themselves indicate the rental therein provided as a fair value, is to be considered. The stipulation makes no other showing as to rental value, and upon the stipulation the court below was requested to assess as damages such sum as the court, from the stipulation, ''is of opinion the plaintiff is entitled to recover.'' The only amount which could have been determined from the stipulation in this behalf, would be the amount which the lease fixes as rental value from August 15, 1893, to May 1, 1895, viz., $22,208.33. We therefore reverse the judgment of the Superior Court, and enter judgment against appellees in this court for that amount.

Reversed, with judgment here.