Francis D. Everett et al., Appellees, v. John Sexton and Company, Appellant.

Gen. No. 37,116.

Heard in the second division of this court for the first district at the October term, 1933. Opinion filed May 24, 1935. Rehearing denied June 5, 1935.

BLUM & JACOBSON, of Chicago, for appellant; HENRY S. BLUM and EDWARD M. KEATING, of Chicago, of counsel.

FREDERICK A. BROWN and MAX FREDERICK GOLDBERG, both of Chicago, for appellees; WM. G. WORTHEY and G. GALE ROBERSON, both of Chicago, of counsel.

MR. JUSTICE SULLIVAN 

This appeal seeks to reverse a judgment for $24,-695.50 in favor of plaintiffs, Everett et al., entered by

the municipal court, June 29, 1933, in a first class action tried by the court without a jury.

Plaintiffs' statement of claim alleged, and the undisputed evidence disclosed, that they were the owners of the premises known as 16-18 South Clark street, Chicago, and entered into a valid lease of same to the Charles Weeghman Corporation (hereinafter referred to as the Weeghman Company) for a term of 20 years, commencing May 1, 1921 (later extended five years); and that the lease contained the following provisions:

"That said Lessee shall, and hereby agrees to pay as additional rent for said premises, all taxes, assessments, water rates, special assessments, gas and electric light and power bills, and all other impositions of any and every kind which may be levied, assessed or imposed upon said premises, for and during the term of this lease, . . .

"That each and every one of the covenants and agreements herein contained shall extend to and be binding upon the heirs, executors, administrators and assigns of said Lessors, and also upon the successors and assigns of said Lessee; . . . and that the words 'Lessors' and 'Lessee' wherever used in this lease shall include in meaning the successors in interest hereunder of said Lessors and of said Lessee respectively."

It was further alleged and shown by the evidence that in 1925 the Weeghman Company, under its seal, executed a written assignment of its lease to one Arthur Doyle, the pertinent portions of such assignment being as follows:

"For and in consideration of the sum of Ten Dollars ($10.00) and other good and valuable considerations in hand paid, receipt whereof is hereby acknowledged, the undersigned Charles Weeghman Corporation does sell, assign, transfer and set over to Arthur Doyle of the City of Chicago, County of Cook, State of Illinois, all its right, title and interest in and to the attached

lease, . . . said lease being between Frances M. Gregory and others as lessors and the Charles Weeghman Corporation as lessee, and bearing date the 15th day of April, 1921.

"In Witness Whereof the said Charles Weeghman Corporation has caused its corporate name to be signed hereto by its President and its corporate seal to be hereto affixed and duly attested pursuant to Resolution of the Board of Directors first thereunto duly adopted.

"Charles Weeghman Corporation,
By D. E. Upton,
President.

"Attest:
Edmond M. Simonde,
Secretary.
Corporate Seal."

It was also alleged and shown by the evidence that the consent of the lessors was neither required nor given to this assignment; that June 30, 1928, defendant, Sexton & Co., Arthur Doyle and one Feuerlicht, entered into an agreement under the seal of all the parties thereto to sublease the premises to Feuerlicht, which agreement recited, among other things, that Doyle had received the assignment of the lease in his own name, "but only as the agent for and in behalf of Sexton & Co."; that all the consideration therefor was paid by Sexton & Co., and that "all rights" of Doyle therein belonged to and were owned by Sexton & Co.; that Sexton & Co. received $38,000 from Feuerlicht as a bonus for making the sublease. It was then alleged and the evidence showed that Sexton & Co. continued to receive all the benefits of the lease until February 2, 1932, when Doyle assigned the lease to Feuerlicht with the consent and approval of Sexton & Co.; that the unpaid balance of taxes levied against the property for 1928 was $4,000; that the taxes levied and unpaid for 1929 and 1930 were $9,873.65 and $10,820.87, respec-

tively; and that these amounts, totaling $24,695.50, were not paid by Doyle, Sexton & Co., nor by any other person in their behalf.

This action by the owners of the premises for the recovery of the unpaid taxes for the years 1928, 1929 and 1930, was originally brought against Doyle and Sexton & Co., but was subsequently dismissed as to Doyle.

Defendant contends that it cannot be compelled to perform a promise made by its agent, Doyle, by virtue of the assignment to him by Weeghman of the lease by and through an instrument in writing under seal, because (1) no one but a party to an instrument under seal may be sued upon it, (2) a privy in estate is a successor to the same estate and not to a different estate in the same property, (3) in order to hold a third person liable on the covenants of a lease as assignee there must have been an actual legal assignment of the lease to him, and (4) the fact that the undisclosed principal receives the benefit of the lease or enjoys the performance of the contract does not authorize its enforcement against it on either the theory of privity of contract or privity of estate.

Plaintiffs' theory is that defendant was in privity of estate with them and is, therefore, liable for the payment of taxes as provided in the lease, as the agreement to pay the taxes is a covenant running with the land; and that defendant is an undisclosed principal in the assignment of the lease to Doyle, which as to him was not under seal.

Defendant concedes that Doyle was only its "dummy" or "straw man," and that it enjoyed the full use and possession of the premises and received all the benefits of the lease from November, 1925, when the lease was assigned to Doyle as defendant's agent by the Weeghman Company, the original lessee, until February 2, 1932, when the lease was assigned to Feuerlicht.

Under an almost identical factual situation in *Ottman v. Nixon-Nirdlinger*, 301 Pa. 234, where the trustees of the beneficial owners of certain property, by a written lease under seal, leased same to "Realty Associates" for a term of 99 years, such lease providing that the lessee was to pay the taxes as additional rent, that it might assign the lease and that not only the lessee but its successors or assigns were bound by its terms, and where such lessee assigned the lease by an instrument under seal to one Gross, admittedly a "straw man" for undisclosed principals who entered into and had the beneficial enjoyment and use of the premises, in an action of assumpsit against the undisclosed principals for their default in payment of taxes and rent, the court, holding that the undisclosed principals were liable, said at pp. 241, 242:

"The agreement with the Associates, Inc., was under seal, as was the assignment to the straw man, Gross, but plaintiffs insist that those having the beneficial enjoyment or use are liable for the performance of the sealed covenants, binding as they did their successors and assigns. If any liability exists it must arise from the proof of a privity of estate rather than of contract.

". . .

"We are not unmindful of the interpretations of the early-recognized rule that, where a demise under seal is in question, an action against an undisclosed principal does not lie, since the relation between the owner of the land and the one who occupies is of a purely legal character. Many decisions upholding this proposition, some of which have been cited by appellee, are found in an annotation to 32 A. L. R. 162, of which the leading one, particularly relied on, is *Borcherling v. Katz*, 37 N. J. Eq. 150. But an examination of the authorities referred to will show the controlling question was whether a privity of estate existed. If so, the

unnamed principal, in actual possession, or having the beneficial enjoyment, may be held, . . .

". . . and if the undisclosed transferees as principals received the beneficial enjoyment of the property, as averred, then they are, in terms, responsible."

Commenting upon the decision in the *Ottman* case and the principles of law enunciated therein, 79 University of Pennsylvania Law Review uses this language at p. 357:

"The rule is well established at common law that an assignee of the leasehold takes upon himself both the burdens and the benefits of all those covenants in the lease which run with the land. A covenant to pay rent and one to pay taxes are among those covenants which so touch and concern the land that they may be said to run therewith. *This personal liability of the assignee to the lessor, is grounded in the doctrine of privity of estate and is alien to those rules arising from the relation of privity of contract.* Therefore, this liability continues only so long as does the privity of the estate. . . . Granted these elementary rules, the problem of the principal case narrows down to this: What is the full meaning and nature of privity of estate; and, is an undisclosed principal whose authorized agent has become assignee, in privity of estate with the lessor? The many Pennsylvania cases on the subject agree in defining 'privity of estate' as the *actual or beneficial enjoyment of the premises, or the right to possession and enjoyment. This enjoyment may take the form of the assignee's deriving material gain and benefit from his position, as where he sublets the property with a profit to himself. . . .* Surely the principal who controls with an unseen hand the nominal assignee has the beneficial enjoyment of the premises, and any benefit derived from the assignment is, in fact his. The agent is but the human conduit through which flows the profits to the unseen principal. The fact that the agent

holds 'legal title' (i. e., the cluster of rights and liabilities that pass with the assignment) is *res nullius momenti,* mere form and shadow. . . . *This reasoning leads to the conclusion that the principal, since he receives the beneficial enjoyment of the property under the assignment, is in privity of estate with the lessor, and therefore liable on the lessee's covenants which run with the land. This result is not at variance with the archaic rule,* that, since a sealed instrument may be enforced only against those who appear as parties on its face, an undisclosed principal is not liable thereon. That rule is based on the relation of privity of contract, whereas *in the situation under discussion it is privity of estate that creates the liability.''* (Italics ours.)

That the equities in this case are with the plaintiffs is not only apparent but admitted. The defendant seeks to evade liability on purely technical grounds. However, we think that the sound principles voiced in the *Ottman* case and the Pennsylvania Law Review, as well as others hereinafter discussed, enable us to reach a decision not only in conformity with the law, but with good morals and equity as well.

Sexton & Co. paid all the instalments of rent on the property due under the lease until the assignment to Feuerlicht in 1932, and it recognized its responsibility to pay and did pay the taxes on the premises from the date of the assignment of the lease by Weeghman Company to Doyle in 1925 until 1928, when it paid $4,268.18 of the $8,268.18 taxes due for that year.

Defendant insists that the assignment of the lease to Doyle, although only under the seal of the Weeghman Company, must be held to be a sealed instrument as to Doyle as well. Is the instrument in question a sealed instrument as to Doyle, who neither signed nor sealed it? The law on this question is clearly set forth

in Amer. & Eng. Ency. of Law, 2nd ed., vol. 8, pp. 64 and 65, as follows:

"The recognized distinction between a covenant and a simple contract is that the former is under seal. It follows, therefore, that a promise, in order to be binding as a covenant, *must be under the seal of the party by whom it is to be performed.* A very *singular exception* to this principle has, however, been recognized by some of the older authorities, and has been adopted as law in New York and New Jersey. It is this: If an estate is conveyed by a deed *inter partes* containing covenants to be performed by the grantee, and the grantee accepts the estate, the deed, though only signed and sealed by the grantor, will be deemed the deed of both parties, and the grantee will be as effectually bound by the covenants as though he had executed the instrument. The principle upon which this exception has been allowed is stated in a New York case to be that the grantee is estopped by his acceptance 'from denying that the seal attached to the deed is his as well as that of the grantor, and hence, when sued upon his covenants, the proof of the deed and of his acceptance thereof, and enjoyment of the estate conclusively establishes that he has covenanted as stated.' But this exception has been justly criticized as erroneous in principle, and will be found to be unsupported by the authority of any adjudged cases except those rendered in the states above mentioned which have adopted it. It may safely be stated as the general rule, that mutual covenants cannot arise out of a deed poll." (Italics ours.)

The rule above set forth is the rule accepted and followed in this and most other States. In *Rockford, R. I. & St. L. R. Co. v. Beckemeier,* 72 Ill. 267, which has never been overruled in so far as we have been able to ascertain after a diligent search of the authorities, and in which it was sought to recover from the grantee

in a deed poll in an action of covenant, our Supreme Court said at pp. 269, 270:

"It is insisted that the action is misconceived; that whilst case or assumpsit might lie, covenant can not, inasmuch as this is but a deed poll, not executed by appellant; that a party can not become bound so as to be sued in covenant, unless he shall have executed the deed containing the covenants. On the other hand, it is claimed that by accepting the deed and availing of its benefits the grantee impliedly covenants to perform the terms and conditions upon which the grant is made; that an implied covenant may as readily arise as may an implied assumpsit.

"In the case of *Burnett v. Lynch,* 5 Barn. & Cress, 589, it was held by the four judges of the King's Bench, that where a lessee, by deed poll, assigned his interest in the demised premises, subject to the payment of rent and the performance of the covenants in the lease, and the grantee of the lessee took and held possession of the premises and occupied them, and before the end of the term assigned to a third person, and the lessor having sued the lessee and recovered for a breach of the covenants, the lessee might maintain case against his grantee who held under the deed poll. . It was there said, that the action of covenant could not be maintained, except against a person who, by himself or some other person acting on his behalf, has executed a deed, under seal, or who, under very peculiar circumstances, has agreed, by deed, to do a certain thing. It was also said: 'Here, the defendant has not engaged, by deed, to perform the covenants, and, consequently, covenant will not lie.'

"The rule, as there stated, seems to be strictly in accordance with the general and well settled practice. It is true, that where the covenant is inherent, or runs with the land, the heirs, executors, administrators and assigns may be bound by such covenants. Shep.

Touchstone, 177. But that is an exception to the general rule, and the case at bar does not fall within the exception. We are, therefore, clearly of the opinion that this action was misconceived, and will not lie on the facts averred in the declaration or shown in proof on the trial."

In *Walker v. Kesner*, 86 Ill. App. 244, the court held at p. 245:

"Without discussing appellant's possible right of recovery against appellees in another form of action upon the facts disclosed by the declaration, it is enough to say that it appears from the declaration, and from each count thereof, that appellees did not enter into any covenant whatever with appellant, and hence that the declaration in covenant was bad. Here the defendant has not engaged by deed to perform the covenants, and consequently covenant will not lie. *Burnett v. Lynch*, 5 Barn. & C. 589; *Moore v. House*, 64 Ill. 162; *R. R. I. & St. L. R. Co. v. Beckemeier*, 72 Ill. 267; *Hancock v. Yunker*, 83 Ill. 208; *Neufeld v. Beidler*, 37 Ill. App. 34; *McCormick v. Seeberger*, 73 Ill. App. 87; *Seeberger v. McCormick*, 178 Ill. 404; *Murphy v. Kohlsaat*, 68 Ill. App. 579."

It thus appears that in so far as Doyle is concerned the assignment of the lease by the Weeghman Company to him constituted only a simple contract because it was not executed by him under his seal. Under the law of this State a valid assignment of a lease may be made by an instrument not under seal. (*Hoover v. Weber*, 154 Ill. App. 263.) At common law all contracts not under seal were deemed to be in parol and were called simple contracts. Simple contracts under the common law included written as well as oral agreements and are distinguished from special contracts simply by the fact that they are not under seal. (*Webster v. Fleming*, 178 Ill. 140; Amer. & Eng. Ency. of Law, 2nd ed., vol. 7, pp. 94, 95.)

The assignment of the lease by the Weeghman Company being a simple contract as to Doyle, was it an assignment to his acknowledged undisclosed principal? The rule is general and of almost uniform application that, as to simple contracts, where a party acts by an agent the act is his and not that of the agent; and it is equally true that where the agent does not disclose the name of his principal the other party may, when he learns it, hold the principal responsible for its performance. (*Barker v. Garvey*, 83 Ill. 184.) Therefore, the assignment of the lease of the premises in question having been made to Sexton & Co., through its agent, Doyle, a privity of estate was created between plaintiffs, the original lessors, and Sexton & Co., which subjected it to liability for the payment of taxes, which was a covenant that "run with the land."

We hold that Sexton & Co., under the assignment of the lease from the Weeghman Company, having admittedly had the possession, use and enjoyment of this property from 1925 to 1932, including the rents, profits and benefits therefrom, and having received a bonus of $38,000 for the assignment of the lease to Feuerlicht in 1932, it would be unconscionable to permit it to evade the payment of the taxes in question. The assignment of its whole estate in the original lease by the Weeghman Company to defendant, Doyle's principal, at once created a privity of estate between it and plaintiffs, the original lessors, and the latter, by reason of such relationship, had a right of action directly against Sexton & Co., as such assignee on covenants running with the land, one of which is to pay the taxes. The relation of landlord and assignee of a term, however, does not result from any privity of contract between the landlord and the assignee of a term, but from privity of estate, and, therefore, when the original lessee has divested himself of his entire term and thus ceased to be in privity of estate with

his original landlord, the person to whom he has transferred that entire term must necessarily be in privity of estate with the original landlord, and hence liable as assignee of the term. (*Sexton v. Chicago Storage Co.*, 129 Ill. 318; *Consolidated Coal Co. v. Peers*, 205 Ill. 531; *Thompson v. O'Gara Coal Co.*, 269 Ill. App. 55.) Under the law and the undisputed facts we are convinced that defendant is clearly liable.

Other points have been urged, but in the view we take of this cause we deem it unnecessary to discuss them.

For the reasons indicated herein the judgment of the municipal court is affirmed.

*Affirmed.*

FRIEND, P. J., and SCANLAN, J., concur.