THOMAS E. GRUBB, Defendant in Error, *vs.* WILLIAM H. MILAN, Plaintiff in Error.

*Opinion filed April 19, 1911.*

1. COURTS—*a motion to vacate judgment stays final judgment until motion is overruled.* A motion to vacate a judgment, made during the term at which a judgment is entered, operates to stay final judgment until the motion is overruled, and the court has jurisdiction to act upon and decide the motion at a subsequent term.

2. SAME—*bill of exceptions may be tendered and signed after judgment becomes final.* Where a motion to vacate a judgment and for a new trial is finally overruled the judgment becomes final and a bill of exceptions can then be tendered to be signed by the judge, as it cannot be known until the motion is overruled that a bill of exceptions will be necessary.

3. SAME—*municipal court has power over its judgments for thirty days.* For thirty days after a judgment is entered by the municipal court of Chicago that court has the same power over such judgment as the circuit court has during the term at which it renders a judgment, and the parties have the same rights.

4. SAME—*municipal court judgment does not become final until motion to vacate is disposed of.* If a motion to vacate a judgment of the municipal court is made within thirty days from the entry of the judgment such judgment does not become final until the motion is disposed of, even though a new trial is not asked for in the motion.

5. SAME—*when it is not improper to allow exception to denial of motion for new trial.* If a motion for new trial is overruled and judgment entered by the municipal court in the defendant's absence, so that no exception could be taken, it is not improper, upon subsequently denying a motion to vacate the judgment, to allow an exception to the denial of the motion for new trial.

6. PRACTICE—*party who makes no objection to form of action cannot complain on appeal.* Where the defendant to an action of assumpsit in the municipal court makes no objection to the form of action he cannot complain thereof in a court of review even though the case was tried upon different and inconsistent theories, sometimes as an action for assumpsit on the contract and sometimes as an action on the case for fraud and deceit.

7. SAME—*disregard of forms of action does not justify disregard of substantive rights.* Disregard by the parties of legitimate methods of stating a cause of action does not justify the courts in paying no regard to the substantive rights of the parties.

8. FRAUD—*alleged fraud must concern an existing fact or facts.* If an action is for fraud and deceit the fraud and misrepresentation must be concerning an existing fact or facts, and a mere promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a representation as can be made the ground of action.

9. CONTRACTS—*written contract is presumed to embody all the agreements of the parties.* In an action upon a written contract it is presumed the contract contains the whole of the agreement and that all previous conversations concerning the matter are merged in the written agreement, and hence there can be no recovery of damages for breach of a promise which is not a part of the contract.

10. EVIDENCE—*when representations by alleged agent are improperly proven.* It is error to permit the plaintiff in a suit to recover damages for loss in a property trade with the defendant to testify that the broker who brought the trade proposition to him said he had been sent by the defendant and to state what the broker said the defendant had represented to him about the property, there being no proof of any authority of the broker to act for the defendant or make any representations.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Municipal Court of Chicago; the Hon. HENRY C. BEITLER, Judge, presiding.

C. STUART BEATTIE, (EDMUND W. BURKE, of counsel,) for plaintiff in error.

WILLIAM A. DOYLE, for defendant in error.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

In November, 1907, Thomas E. Grubb, the defendant in error, exchanged an apartment building in Chicago, subject to an encumbrance of $40,000, with William H. Milan, plaintiff in error, for the fixtures, property and good will connected with a restaurant in said city and $2000 in cash. Milan remained in charge of the restaurant for Grubb eight

days after the exchange and Grubb then took charge. Soon afterward Grubb commenced a suit in assumpsit in the municipal court of Chicago against Milan and filed a declaration consisting of one count, alleging the agreement for the exchange and that Milan agreed to convey $5000 worth of stock, wares, merchandise, produce, groceries and eatables located in the basement and kitchen of the restaurant, to transfer the property free from encumbrance and to procure an assignment of the lease, and that the lessor would acknowledge Grubb as tenant. It averred that the plaintiff performed the contract on his part, but that the defendant failed in this: that he did not transfer $5000 worth of stock, merchandise, eatables, produce and other property; that the property was encumbered, and the defendant did not make a transfer of the lease by which the lessor acknowledged plaintiff as tenant. To this declaration a plea of non-assumpsit was filed. . What was called an amended declaration was afterward filed, setting forth the agreement for the exchange and alleging that the defendant represented and warranted his property to be worth $30,000 and the business worth $40,000 per year; that there were stored in the basement of the premises stock and supplies worth $5000 which he would deliver to the plaintiff, and that there were no outstanding debts or obligations. It was averred that the representations were false and fraudulent and induced the plaintiff to transfer his property; that he was prevented from investigating the value of the business and the amount of stock on hand by the representations and warranties of the defendant; that the premises and business were not worth $30,000; that the business did not pay $40,000 per year; that the stock and goods in the basement were not worth $5000; that the business was not unencumbered but defendant had given out meal tickets to the extent of $3000, and that the lease was not of great value and no transfer was assented to by the owner of the building. An order was afterward made that the original declaration

stand as an original count and the declaration was treated as containing two counts. There was no plea to this second count, but although issue was not taken on it the case came to trial before the court and a jury.

The plaintiff introduced a large amount of testimony and among other witnesses examined the defendant. After the defendant had been asked whether he did not transfer the property received from Grubb to his wife soon after the exchange, and had been compelled to answer that he signed some papers and took them to the recorder's office, he was asked by plaintiff's attorney to produce the papers and whether he could produce them within an hour or so. He answered that he could not, as he did not know where they were. Plaintiff's attorney then asked him to produce them, and the defendant was told by the court to step aside and left the court room to find the papers called for. The plaintiff called other witnesses, who were examined, and then demanded the papers. The fact that the defendant had gone after the papers was explained, and his attorney said that he wanted to put him on the stand when he returned, and the plaintiff thereupon rested his case. The court required the defendant's attorney to proceed, and after offering a lease of the restaurant premises, with an assignment of the same, the case was argued by counsel. As the argument was finished the defendant entered the court room and had been gone at that time an hour and a half. His attorney offered him as a witness and the court sustained an objection. There was a verdict for the plaintiff for $7600 and the defendant's attorney entered a motion for a new trial. On June 15, 1908, the plaintiff appeared by his attorney, no one appearing for the defendant, and the court overruled the motion and entered judgment on the verdict. Fifteen days afterward, on June 30, 1908, the parties being present in court, the defendant moved the court to vacate the judgment, and this motion was entered and continued by the court from time to time until Octo-

ber 8, 1908, when it was overruled and defendant excepted. The defendant then asked leave to except to overruling the motion for a new trial and to the entry of judgment, which had been done in the absence of his attorney. The court allowed the exception and fixed sixty days from that time for a bill of exceptions. The bill of exceptions was settled and signed within the time allowed and the case was taken to the Appellate Court for the First District. On February 16, 1909, the defendant in error moved the Appellate Court to strike out of the record the bill of exceptions, which motion was denied. On October 20, 1910, the court having taken the case under advisement for a decision on the errors assigned, struck from the record that part of the bill of exceptions containing the proceedings at the trial, held that there were no errors well assigned on the common law record or the proceedings had subsequent to the judgment, and affirmed the judgment. We granted a petition for a writ of *certiorari,* and the record has been brought to this court.

If a judgment is rendered at a term of court and a motion is made during the term to vacate the judgment, the court will retain jurisdiction of the cause and have full power to act upon and decide the motion at a subsequent term. (*Hibbard* v. *Mueller,* 86 Ill. 256; *Donaldson* v. *Copeland,* 201 id. 540; *People* v. *Springer,* 106 id. 542.) Such a motion pending and undetermined at the end of a term is continued to the next term by force of the statute, and the legal effect is to stay a final judgment until the overruling of the motion. (*People* v. *Gary,* 105 Ill. 264; *Village of Hinsdale* v. *Shannon,* 182 id. 312.) When a motion to vacate a judgment and for a new trial is finally overruled, the judgment becomes final and a bill of exceptions can then be tendered to be signed by the judge. (*Hearson* v. *Graudine,* 87 Ill. 115.) The municipal court of Chicago has no stated terms but a period of thirty days is substituted by section 21 of the act creating the court,

which provides: "Every judgment, order or decree of said court final in its nature shall be subject to be vacated, set aside or modified in the same manner and to the same extent as a judgment, order or decree of a circuit court during the term at which the same was rendered in such circuit court, provided a motion to vacate, set aside or modify the same be entered in said municipal court within thirty days after the entry of such judgment, order or decree." The municipal court has the same power over its judgments for a period of thirty days as circuit courts have during the term at which the judgment is entered, and parties have the same rights. We considered the effect of a motion to set aside a judgment and for a new trial in that court in the case of *Hosking* v. *Southern Pacific Co.* 243 Ill. 320, and held that a judgment of that court does not become final until such a motion is disposed of.

It is urged, however, that the rule is not applicable to this case because the motion was to vacate the judgment without asking for a new trial. It would be an indefensible and absurd proposition to say that a judgment is final where there is a motion to vacate it and not final where the motion is to vacate the judgment and for a new trial, but the motion was, in effect, for a new trial and was so treated. Vacating the judgment without a new trial would have done no good, and no reason was offered for setting aside the judgment except to obtain another trial. The motion was supported by an affidavit showing the efforts made by the defendant to find the papers which the plaintiff's attorney had demanded of him, and alleging facts which would constitute a good defense to the action. The affidavit stated that defendant had no other witness than himself by whom he could prove the matters and things set forth in the affidavit, and that if given an opportunity in another trial he would be able to disprove each and all of the matters and things averred against him. The motion for a new trial had been overruled and judgment entered in the absence of

the defendant's attorney and necessarily no exception was taken, but when the motion to vacate was overruled the court allowed an exception to the denial of the motion for a new trial. Under the circumstances we see no objection to the exercise of that power by the court, which still had jurisdiction of the cause, but there were various rulings on the trial which are complained of and which required no motion for a new trial. (*Yarber* v. *Chicago and Alton Railway Co.* 235 Ill. 589.) It could not be known until the motion was disposed of that a bill of exceptions would be required. *People* v. *Gary, supra; Guyer* v. *Davenport, Rock Island and Northwestern Railway Co.* 196 Ill. 370.

The Appellate Court erred in striking out all that part of the bill of exceptions containing the proceedings on the trial and did not consider the errors assigned thereon. The plaintiff in error would have had a right to have all the errors assigned, considered and decided by the Appellate Court, but he expressly waived that right at the bar of this court, and for the purpose of avoiding needless delay stipulated that the case need not be remanded to the Appellate Court to decide upon the assignment of errors not considered, but should be considered by this court as though the judgment of affirmance by the Appellate Court was a finding against him upon all the errors assigned.

The action was assumpsit, and the declaration, in each count, alleged a contract by which the defendant agreed to do certain things and made certain representations and warranties of existing facts, and it averred that the restaurant property was not of the value and did not produce the income represented and that the promises were not fulfilled, and by reason thereof the plaintiff suffered damages. It is quite uncertain upon what ground the recovery was had, but the case was tried upon different and inconsistent theories, sometimes as an action in assumpsit on the contract and at others as an action on the case for fraud and deceit. No objection was made by the defendant to the form of the

action and he cannot now complain that it was assumpsit. (*Rockford, Rock Island and St. Louis Railroad Co.* v. *Beckemeier,* 72 Ill. 267.)   But a disregard of legitimate methods of stating a cause of action does not justify paying no regard to the substantive rights of parties.   The confusion and uncertainty apparent on the trial is illustrated by the charge in which the court first told the jury that the plaintiff must prove the contracts and warranties alleged and stated the grounds for recovery upon them as in assumpsit, and then stated that the action was not brought on the contract but was brought for fraud and deceit and that the plaintiff might recover from the defendant for damages resulting therefrom.   No exception was taken to the charge but objections were interposed on the trial.   The plaintiff was allowed to prove that the defendant promised to turn over and deliver $5000 worth of groceries, supplies and stock and failed to do so.   If an action is for fraud and deceit, the fraud and deceitful representation must be concerning an existing fact or facts.   A promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a representation as can be made the ground of an action for deceit.   (*Gage* v. *Lewis,* 68 Ill. 604; *Murphy* v. *Murphy,* 189 id. 360; *Miller* v. *Sutliff,* 241 id. 521.)   After the transfer the defendant remained in charge of the restaurant for eight days, acting for the plaintiff, and was feeding about 1400 people per day, and there was evidence that when the plaintiff took charge there was not $5000 worth of stock on hand.   But if the action was for fraud and deceit plaintiff had no right to make proof of an unfulfilled promise.   A written contract was entered into between the parties in which they set down what had been agreed upon between them.   In an action on the contract it is presumed to have contained the whole of the agreement, and all previous conversations relating to the subject matter were merged in the written contract.   (*Graham* v. *Sadlier,* 165 Ill. 95; *Town of Kane*

v. *Farrelly,* 192 id. 521; *Telluride Power Transmission Co.*
v. *Crane Co.* 208 id. 218; *Schneider* v. *Sulzer,* 212 id. 87.)
The written contract was lost or destroyed, but when the
exchange was made the defendant executed a bill of sale
of the property and the good will of the business, which
contains nothing about the matters alleged as a cause of
action. No attempt was made to prove the conditions of
the written agreement which fixed the rights of the parties
in an action on the contract, but the attorney who acted for
the plaintiff in preparing the contract testified that the de-
fendant said there would be several thousand dollars worth
of provisions on hand when the restaurant would be trans-
ferred, but he could not remember whether there was to be
$2000 or $5000 worth. He said that he wanted to put the
agreement in the written contract but was overruled by
others who thought the defendant would keep his word, and
it was omitted. If the action was on the case for fraud and
deceit it would make no difference that the misrepresenta-
tion was not in the written contract, (*Antle* v. *Sexton,* 137
Ill. 410,) but, as already seen, the agreement would not be
a fraud.

The plaintiff offered evidence that the defendant said
he had given out some meal tickets, but they would all,
or about all, be in before the matter was closed up, and
the plaintiff was then permitted to testify that people came
there with meal tickets and demanded meals. He was al-
lowed to testify that one man came with 500 tickets, an-
other with 400, another with 175, another with 190, another
with 225 and another with 274. He proved that one
Schnabble held $375 worth of meal tickets and one Kub-
leck $180 worth. He also testified that these persons told
him that they had the tickets before the sale of the restau-
rant to him. The evidence was incompetent, both because
the statements were hearsay and because the matter had
nothing to do with the plaintiff or his rights. There was
no evidence that he was to furnish meals to people who

had meal tickets, and he only furnished a few voluntarily. When the testimony about the meal tickets was offered, the court stated that the evidence showed that the defendant sold these tickets in advance and the plaintiff could follow it up. The abstract does not show any testimony of that kind and the statement of a fact not proved was prejudicial. There was no evidence of any agreement to turn over the lease, as alleged in the declaration.

The apartment building belonged to a man named Barry, who had an office in which the plaintiff and George W. Stewart had desk room, and the $2000 paid by the defendant was turned over to Barry. Stewart and plaintiff were partners in the real estate business and had a man named Jose Migneault, a broker, working for them, to whom they advanced $15 per week to apply on commissions to be earned by him. He brought in the proposition to trade the Barry apartment building for the restaurant, and the plaintiff was allowed to prove that Migneault said the defendant sent him over to make the trade, and to testify to everything that Migneault said the defendant had told him. There was no evidence of any authority by the defendant to Migneault to make representations to his employers with reference to the matter, and there was no other evidence of some of the things which the plaintiff proved were so represented by his broker.

There were other errors prejudicial to the defendant committed by the court upon the trial, but they are not likely to occur upon a trial limited to a definite and consistent theory of a cause of action.

The municipal court erred in not vacating the judgment and awarding a new trial.

The judgments of the Appellate Court and the municipal court are reversed and the cause is remanded to the municipal court.          *Reversed and remanded.*