ARTHUR KEITHLEY, Appellant, *vs.* THE MUTUAL LIFE
INSURANCE COMPANY OF NEW YORK, Appellee.

*Opinion filed February 16, 1916.*

1. FRAUD—*representation must be an affirmance of a fact to
constitute fraud.* To constitute fraud in law a false representa-
tion must be an affirmance of a fact, and not a mere promise or
expression of opinion or intention.

2. SAME—*mere promise to perform does not give rise to action
for fraud.* A promise to perform an act, though accompanied at
the time by an intention not to perform it, is not such a represen-
tation as can be made the ground of an action for deceit.

3. SAME—*what representation by insurance company does not
relate to a fact.* A representation by an insurance company to the
purchaser of a policy that the surplus of the policy plus the legal
reserve would amount to a certain sum at the end of twenty years
and that the company would then pay him that sum if he survived
is not a representation of a fact, and will not, of itself, give rise
to an action for fraud and deceit.

4. SAME—*an action for fraud and deceit must be begun within
five years from time cause of action accrued.* An action for fraud
and deceit must be begun within five years after the cause of ac-
tion accrued, unless there has been a fraudulent concealment of
the cause of action within the meaning of section 22 of the Stat-
ute of Limitations.

5. LIMITATIONS—*what is meant by fraudulent concealment of
cause of action.* The fraudulent concealment of a cause of action,
as meant by section 22 of the Statute of Limitations, must be some
affirmative act or representation intended to prevent the discovery
of the cause of action and which actually does prevent it.

6. SAME—*what must be averred in replication setting up fraud-
ulent concealment.* Where the Statute of Limitations is pleaded
to a declaration in an action for fraud and deceit, a replication
setting up fraudulent concealment of the cause of action must set
out the facts constituting the concealment, and the fraudulent rep-
resentations which form the basis of the action do not constitute
a fraudulent concealment, in the absence of allegations of acts or
representations tending fraudulently to conceal cause of action.

7. SAME—*when rule of fraudulent concealment does not ap-
ply—effect of a fiduciary relation.* The rule that the Statute of
Limitations will not begin to run against a cause of action for
fraud and deceit until the discovery of the fraud, does not apply
if the party affected by the fraud might with ordinary diligence

have discovered it, but the existence of a fiduciary relation making it the duty of the person committing the fraud to disclose the true nature of the transaction to the party defrauded may excuse the latter from the use of ordinary diligence to discover the fraud.

8. SAME—*annual acceptance of premiums is not a continuance of initial fraud by insurance company.* Where a cause of action for fraud and deceit is based upon alleged false representations by an insurance company as to what a policy of insurance would be worth at the end of twenty years, the annual acceptance of the premiums on the policy is not a continuance of the initial fraud, such as prevents the running of the Statute of Limitations.

FARMER, C. J., dissenting.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Peoria county; the Hon. JOHN M. NIEHAUS, Judge, presiding.

KEITHLEY & KEITHLEY, for appellant.

PAGE, HUNTER, PAGE & DALLWIG, (WINSTON, PAYNE, STRAWN & SHAW, of counsel,) for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

Arthur Keithley sued the Mutual Life Insurance Company of New York in the circuit court of Peoria county in an action on the case and appealed from the judgment in favor of the defendant to the Appellate Court for the Second District. That court having affirmed the judgment and granted a certificate of importance, the plaintiff is prosecuting a further appeal to this court.

The action was for fraud and deceit, and the declaration consists of two counts. The case was disposed of upon demurrers which were sustained to the second count and to a replication to a plea of the five years' Statute of Limitations to the first count. The assignments of error question the action of the court in sustaining the demurrers.

The second count averred that on December 30, 1893, the defendant, for a valuable consideration, sold to the

plaintiff a policy of insurance of that date issued by the defendant upon the plaintiff's life and designated by the defendant a twenty-year distribution policy, by the terms of which the defendant agreed to distribute and pay to the plaintiff, at the end of twenty years, certain sums of money determinable on the amount of the surplus of the company at the end of the twenty-year period, plus the defendant's legal reserve. It is averred that at the time of making the contract the defendant did not and could not know what the surplus or earnings of the company would be for the twenty-year period nor the amount that would be due the plaintiff upon a policy at the period of distribution, but that in order to induce the plaintiff to enter into the contract the defendant falsely and fraudulently represented to the plaintiff that the surplus of the policy, plus the legal reserve at the end of the twenty-year period, would amount to $6000, and that the defendant would pay the plaintiff on said policy, at the end of the twenty-year period, $6000; that the plaintiff also had no knowledge of the earnings or surplus to become due upon said policy except what was told him by the defendant, all of which the plaintiff accepted and believed to be true, and in consequence of such representations the plaintiff accepted said policy and paid the defendant for it. It is further averred that the policy has not earned the sum of $6000, but the defendant has refused, and still refuses, to pay the plaintiff anything on said policy, wherefore the defendant has defrauded the plaintiff to his damage in the sum of $6000.

The only representations alleged to have been made by the defendant are, that the surplus of the policy, plus the legal reserve, would amount to $6000 at the end of twenty years and that the defendant would then pay the plaintiff $6000. In order to constitute fraud in law a representation must be an affirmance of fact and not a mere promise or expression of opinion or intention. A promise to perform an act, though accompanied at the time with an intention

not to perform it, is not such a representation as can be made the ground of an action for deceit. (*Grubb* v. *Milan,* 249 Ill. 456; *Miller* v. *Sutliff,* 241 id. 521; *Day* v. *Fort Scott Investment and Improvement Co.* 153 id. 293; *Gage* v. *Lewis,* 68 id. 604.) The statement that the defendant would pay $6000 at the end of twenty years was no more than a promise. The statement that the surplus of the policy, added to the reserve, would amount to $6000 was no more than a prophecy,—the expression of an expectation. The statement of a thing in the future, to be a fraudulent misrepresentation, must amount to the statement of a fact. The statement that a particular article will bear a certain strain or sustain a certain weight; that a machine will do certain work; that land will produce certain crops, or the like, although future in form, refers to the suitability or capacity of the article or machine for the proposed purpose, or the character or fertility of the soil or the possession of the attributes which will produce the stated results, and amounts to a statement of an existing fact. The statement here complained of is not of that character.

The appellant insists that the appellee sold him a commodity falsely representing it to be of sufficient present value or earning power to produce a given sum at the end of a given period. The appellee did not sell a commodity to the appellant. It entered into a contract with him, in consideration of twenty annual payments of $184 each, to insure his life for $5000 for twenty years, and if he survived that period to pay him the reserve on his policy and his proportion of the surplus. The representation was that these two sums would together amount to $6000. The count itself avers not only that the appellee did not know, but that it could not know, what the surplus would be, and this was necessarily true. It depended upon the number and amount of policies of the same kind as the appellant's which the company might issue, the number of maturities of such policies by death, the rate of interest the appellee might re-

ceive on its funds, the expense of conducting its business, and all the contingencies attending its business during a period of twenty years. The statement was not one of fact but in its very nature amounted only to an estimate of the future business of the company, which could not be made the basis of an action for fraud and deceit.

In his petition for a rehearing the appellant has cited three cases as holding that false representations as to what the future earnings of a corporation or an insurance company will be may be made the basis of an action for fraud. They are *French* v. *Ryan*, 104 Mich. 625, *Beckwith* v. *Ryan*, 66 Conn. 589, and *Hedden* v. *Griffin*, 136 Mass. 229. In each one of those cases the false representations upon which the action was sustained were statements as to past occurrences, either as to the business of the corporation in the past, the amount of capital that had been secured, the persons who had joined in the business or were acting as directors, the dividends previously declared, or similar matters. In the other case on this point cited by the appellant, (*Garry* v. *Garry*, 187 Mass. 62,) the court says in its opinion in regard to the declaration: "The declaration is not made with the technical formality of an ordinary declaration for deceit, but we are of the opinion that, with a proper interpretation of its meaning, it is, in substance, sufficient. It avers false representations as to the state of the title and as to the nature of the sale in its relation to the plaintiff's husband and to the disposal of the proceeds, which induced her to believe that he was to receive one-half of the price, when, in fact, he was to receive nothing. * * * It was rather a statement of existing conditions and arrangements in reference to which the deed of release was supposed to be made."

The demurrer to the second count was properly sustained.

The first count of the declaration alleged that on December 20, 1893, the defendant presented to the plaintiff

for his acceptance a policy of insurance on his life called a twenty-year distribution policy, whereby, for a consideration of $184 to be paid yearly for twenty consecutive years, the defendant agreed to pay $5000 to the plaintiff's wife at the plaintiff's death if that should occur within twenty years from the date of the policy, and if the plaintiff should survive such twenty-year period then the defendant would pay him his distributive share of the surplus, plus the legal reserve; that to induce the plaintiff to accept and to pay for the policy the defendant falsely and fraudulently represented to the plaintiff that for a long term of years the defendant had been issuing policies for like amounts and on like terms as that which it was then offering to the plaintiff, and that the surplus and reserve had never been less than $5664.05 on each policy and the defendant had never paid any such policyholder less than that amount and almost always more; that if the plaintiff would accept the policy the defendant would certainly pay him at the end of twenty years, if he were then alive, not less than $5664.05 on the policy and probably much more than that sum; that the defendant further falsely and fraudulently represented that because it was a creature of the State of New York the law of the State of New York would compel it to pay the holders of such policies, at the end of twenty years, $5664.05, and that if the surplus and legal reserve were greater than that amount the plaintiff would receive his proportionate share of such additional amount. It was further averred that the plaintiff had no other information concerning any of the matters so represented to him by the defendant and reposed confidence in the defendant, and, believing all of its representations to be true, entered into a contract with the defendant and accepted the policy and paid the defendant the sum of $184, and continued for twenty consecutive years to pay an annual premium of that amount upon the policy, which the defendant accepted as full compliance by the plaintiff with the terms of the policy. It is

averred that at the expiration of said twenty-year period the defendant did not pay the plaintiff the sum of $5664.05, or any part thereof, but wholly refused to do so, wherefore an action has accrued to the plaintiff against the defendant for the fraud practiced by the defendant upon him.

A demurrer was overruled to this declaration, and it will be assumed that it stated a cause of action. The defendant filed a plea of the Statute of Limitations of five years, to which the plaintiff filed a replication averring that the defendant fraudulently concealed from the plaintiff the fraud which constituted the plaintiff's cause of action until within less than five years prior to the commencement of the suit, such fraudulent concealment consisting of the following conduct on the part of the defendant: The replication then set out the same facts and the same representations which were averred in the first count of the declaration, together with the following additional averments: That among other representations to induce the plaintiff to purchase said policy the defendant represented that it was a unique form of policy, containing provisions in favor of the insured not found in any other form of policy, and that its value at the end of said twenty-year period was based upon and would be determined by the number and amount of such policies in force in said company at the end of that period, and that the greater the number and amount of such policies issued by the company the more earnings the company would make and the more money it would have for distribution for the plaintiff's policy; that this was a popular form of policy and defendant's intention was to devote its greatest efforts to the sale of that form of policy. The replication repeats the averments of the declaration as to the plaintiff's want of knowledge, his reliance on the representations and his payment of the premium on the policy, and avers that the defendant, in fraud of the rights of the plaintiff and without notice to him, on January 1, 1908, ceased issuing policies of the class and character of the

plaintiff's policy and has never since issued any such policies, and that it fraudulently withheld from the plaintiff all knowledge of its having quit issuing such policies, and the plaintiff did not know that the defendant had ceased issuing such policies until January 1, 1913. It is further averred that on December 15, 1896, the defendant repeated to the plaintiff all of the false and fraudulent representations aforesaid to induce the plaintiff to take out another policy upon his life of like character as the former policy, and the plaintiff did accept another policy and has annually ever since paid the defendant the premiums upon such policy. It is further averred that in the year 1904, and at divers times since, the defendant repeated to the plaintiff each and every of the representations which in such replication have been ascribed to it, and at no time when such representations were made to him by the defendant did the plaintiff have any information concerning the falsity of any statement, but he reposed confidence in the defendant and believed all the said representations to be true, and, relying upon them, on February 15, 1913, while still ignorant of the fraud practiced upon him by the defendant, the plaintiff inquired of the defendant the amount that would be due him from the defendant on his policy of insurance when it matured on December 30, 1913, and then for the first time the defendant, in answering said question, disclosed to the plaintiff the fraud perpetrated upon him and the plaintiff then and there first learned of said fraud.

The question to be determined is whether the replication brings the case within the exception contained in section 22 of the Statute of Limitations, which provides that "if a person liable to an action fraudulently conceals the cause of such action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same discovers that he has such cause of action, and not afterwards."

The appellee insists that in order to prevent the running of the statute there must be some act of the defendant designed to conceal the plaintiff's cause of action or prevent its discovery; that mere silence of the defendant is not sufficient. The appellant's contention is that the Statute of Limitations has no application to causes of action arising out of fraudulent representations made by the defendant until the discovery of the fraud by the plaintiff, even though the defendant has made no effort to conceal the fraud other than the representations by which it was originally accomplished. In fact, the appellant states that the demurrer, instead of being sustained to the replication, should have been carried back to the plea, for the reason that the statute does not run against such fraud as is set out in the declaration until it is discovered.

The language of the statute is positive in its requirement that all civil actions not otherwise provided for (among which this is included) shall be commenced within five years after the cause of action accrued. There is no exception of causes of action originating in fraud. It is true that in *Campbell* v. *Vining*, 23 Ill. 473, two of the three judges of this court expressed the opinion in a single line that "fraud may be replied to the Statute of Limitations," though that was not the point in the case but it was decided on another point; and in *Henry County* v. *Winnebago Swamp Drainage Co.* 52 Ill. 299, it was held that in equity, where the defendant had been guilty of fraud in respect to the right sought to be enforced and the complainant had no knowledge of the fraud until within the statutory period of limitation, the court would not permit the interposition of the statute against conscience but would administer a remedy within its jurisdiction though the limit of the statute had expired before the filing of the bill and would enforce the right for the prevention of a fraud. When these cases were decided section 22 which has been quoted had not been enacted nor was there any similar stat-

utory provision, but some years afterward, in 1872, it was added to the Statute of Limitations in the revision of the laws. Soon afterward it was construed in *Beatty* v. *Nickerson,* 73 Ill. 605, in which it was held, in an action for fraud and deceit in the sale of a patent, that a replication to a plea of the Statute of Limitations that the defendant fraudulently concealed from the plaintiff the knowledge of any cause of action and that the plaintiff had made the discovery within less than five years prior to the commencement of his action, and that the representations of the defendant as charged in the declaration were false and fraudulent to the knowledge of the defendant, did not meet the requirements of the statute because it failed to set out the facts constituting the concealment, and that a reference to the declaration did not supply the defect, for in the declaration there was no allegation of concealment or of acts tending fraudulently to conceal a cause of action.

In *Parmalee* v. *Price,* 208 Ill. 544, a suit was brought to enforce the liability of stockholders whose stock had been paid for by property taken at a fraudulent over-valuation. The transaction had occurred at a time greater than that limited by the statute before suit was brought, and it was insisted on behalf of a complainant who had no knowledge of the fraud until within the statutory limit, that the Statute of Limitations did not begin to run until that time, but it was held that the statement that the creditor had no knowledge of the existence of the cause of action did not amount to a statement that the person liable had fraudulently concealed the cause of action and was not sufficient to prevent the application of the statute.

In *Lancaster* v. *Springer,* 239 Ill. 472, the complainants' claim was that the defendant had, by means of a fraudulent scheme, received the proceeds of certain mortgages and never accounted for them, as he was bound to do. It was held that the failure of the complainants to learn of the existence of their cause of action did not prevent the opera-

271 – 38

tion of the Statute of Limitations, and that the concealment of a cause of action which will prevent the operation of the statute must be something of an affirmative character, designed to prevent, and which does prevent, the discovery of the cause of action. Mere silence by the person liable is not concealment of the cause of action. Such concealment must consist of affirmative acts or representations.

In *Vigus* v. *O'Bannon,* 118 Ill. 334, an agent of the plaintiff having collected for him the full amount of a life insurance policy reported that he had collected only a smaller amount, which he paid to the plaintiff. Nine years later, the agent having died, a claim for the amount collected and not paid over was presented against his estate. As an answer to the Statute of Limitations the claimant relied upon the facts that he had not discovered the fraud until within a short time before filing his claim, and that a relation of trust and confidence existed between him and the deceased which excused the exercise of greater diligence to ascertain the facts. It was held that the rule that in cases of fraud the Statute of Limitations begins to run only from the time of the discovery of the fraud does not apply where the defrauded person might by the exercise of ordinary diligence have discovered the fraud, but that the failure to use such diligence might be excused where there was a relation of trust and confidence between the parties, making it the duty of the one committing the fraud to disclose to the other the true state of the transaction, and where the latter was prevented from discovering the fraud through his confidence in the other.

The doctrine announced in these decisions is, that the fraudulent concealment of a cause of action which will prevent the running of the Statute of Limitations must be some affirmative act or representation intended to prevent the discovery of the cause of action, which does actually prevent such discovery; that a replication setting up such fraudulent concealment must set out the facts constituting

the concealment; that the fraudulent misrepresentations : which form the basis of the cause of action do not constitute a fraudulent concealment in the absence of allegations of acts or representations tending fraudulently to conceal the cause of action; that the rule that the statute begins to run only from the discovery of the fraud does not apply when the party affected by the fraud might with ordinary diligence have discovered it; and that the existence of a fiduciary relation making it the duty of the person committing the fraud to disclose the true nature of the transaction to the person defrauded may excuse the latter from the use of ordinary diligence to discover the fraud.

The appellant has cited the case of *Bailey* v. *Glover*, 21 Wall. 342, which was a bill in chancery by an assignee in bankruptcy to set aside as fraudulent and void, conveyances of real estate by the bankrupt. The case was heard on a demurrer to the bill. The allegations of the bill are not set out in the opinion of the court, in which it is said that the bill makes a very clear case of fraudulent conspiracy to defraud the creditor, and alleged that the bankrupt and his grantees kept secret their fraudulent acts and endeavored to conceal them from the knowledge of the assignee and of the creditor, whereby they were prevented from obtaining any sufficient knowledge or information thereof until within two years before filing the bill. The bill was not filed until four years after the execution of the conveyances, although the statute required it to be brought within two years. The court held that the demurrer to the bill should have been overruled, saying: "We hold that when there has been no negligence or *laches* on the part of the plaintiff in coming to the knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed or is of such character as to conceal itself, the statute does not begin to run until the fraud is discovered by or becomes known to the party suing, or those in privity with him."

In *Wood* v. *Carpenter,* 101 U. S. 135, the court had before it the statute of Indiana, in substance the same as section 22 of our Statute of Limitations. The question there arose on demurrer to a replication. In this case, also, the transaction involved consisted of fraudulent conveyances made by a debtor for the purpose of defrauding his creditors. The declaration had set up the conveyances and alleged their fraudulent character. The replication averred that the defendant concealed the facts that the judgments confessed were fraudulent; that the grantee held the property in trust for the defendant; that the defendant had committed perjury before a master in Massachusetts in order to procure his discharge from custody, in swearing that he was not possessed of pecuniary means to the extent of $20 and had in good faith assigned all his property for the benefit of his creditors; that the defendant was, in fact, the owner of the property conveyed and that his representations as to his insolvency were false and fraudulent; that the concealment was effected by the defendant by means of fraud, perjury and the other wicked devices set forth and described in the complainant's complaint, and that the plaintiff had no knowledge of the facts so concealed by the defendant until a few weeks before the commencement of his suit. The court sustained a demurrer to the replication and summed up its conclusions as follows: "A wide and careful survey of the authorities leads to these results: The fraud and deceit which enable the offender to do the wrong may precede its perpetration. The length of time is not material, provided there is the relation of design and its consummation. Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence; and the means of knowledge are the same thing, in effect, as knowledge itself. The circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown

to be consistent with the requisite diligence. The reply is clearly bad. It contains some vigorous declamation but is wanting in the averment of facts which are indispensable to give it sufficiency as a pleading, for the purpose intended. The complaint to which it refers does not help it. Further remarks are unnecessary."

These decisions have both been referred to by the same court with approval in subsequent cases. (*Bates* v. *Preble,* 151 U. S. 149; *Rosenthal* v. *Walker,* 111 id. 185; *Felix* v. *Patrick,* 145 id. 317; *Hardt* v. *Heidweir,* 152 id. 547.) · In *Bates* v. *Preble, supra,* the plaintiff was the owner of certain stocks and bonds which she kept in a safety deposit box to which her son had the key. The son took securities from the box at various times and delivered them to the defendants, who were stock brokers and had notice that the securities belonged to the plaintiff, and they were sold. Suit was brought against the brokers to recover for the ·conversion of the securities, and one of the defenses was the six years' Statute of Limitations. The plaintiff insisted that a cause of action was not barred because defendants had fraudulently concealed the conversion from her and she did not discover it until within six years before bringing the suit. The court, in discussing an instruction given on the subject of fraudulent concealment, said : "We think the court erred in this instruction. It assumes that the same evidence which tended to show a conspiracy between Edward Preble and the defendants to obtain these bonds was also evidence of an intention on the defendants' part to keep a knowledge of the transaction from the plaintiff. This, however, does not necessarily follow. · If it did, the result would be that whenever a party has been guilty of a fraud which it is for his interest should not be known by the person upon whom it is committed, he would practically lose the benefit of the statute though he may not have made the slightest effort to keep it secret. The vice of the instruction in this particular was that there was no evidence

whatever that the defendants, or either of them, said or did anything, before or after the securities came into their hands, to conceal the transaction from the plaintiff." Also in *Felix* v. *Patrick, supra,* in discussing the diligence of the complainant in discovering that she had been defrauded, the court said: "It is true there is an averment that Patrick never informed the said Sophia or her husband that he had located such strip, but, on the contrary, falsely concealed the same and exercised every precaution to prevent such proceeding coming to the knowledge of the party. But no acts of his in this connection are averred in the bill, and we are left to infer that his concealment was that of mere silence, which is not enough."

In *Caldwell* v. *Ulsh,* 103 N. E. Rep. 879, it is said that it is uniformly held that to constitute such a concealment as will suspend the operation of the statute something more than mere silence of the person sought to be charged is necessary. There must be a resort to some trick or artifice to prevent discovery, or some false statement respecting some material fact, or some other concealment of such fact by some affirmative act or speech when inquiry was being made,—"that is, to constitute such a concealment such person must have been guilty of some positive affirmative act designed and intended to prevent such other person from obtaining information sought." And it is there held that the acts constituting a fraudulent concealment ordinarily must be subsequent to the accruing of the cause of action, but they may be concurrent or coincident with it, or even precede it, provided they are of such a nature or character as to operate after the time when the cause of action arose and thereby prevent its discovery, and were so designed and intended.

A reading of the declaration and replication discloses that the only material facts alleged to have been falsely stated are, that for a long term of years the defendant had been issuing policies for like amounts and on like terms as

that which it was then offering the plaintiff; that the surplus and reserve had never been less than $5664.05 on each policy, and the defendant had never paid any such policyholder less than that amount and almost always more; and that the defendant was a creature of the State of New York, and the law of that State would compel it to pay to the holders of such policies, at the end of twenty years, $5664.05. There was nothing in the nature of these statements tending to prevent the plaintiff from investigating their truth or ascertaining the facts. A reasonable effort would have enabled him to know whether those statements were true or not. The requirement of the laws of New York as to settlement with holders of such policies could have been readily ascertained. There was no relation of confidence or trust between the plaintiff and the defendant. They were dealing at arm's length, and while the defendant had at the time, no doubt, better means of information than the appellant, there was nothing to prevent the latter from learning the facts. He could have demanded the names and residences of persons to whom, during a long term of years, the defendant had issued policies of like amounts and on like terms as the appellant's and the times and amounts of the settlement of such policies, and could have thus determined the truth of the statements. The repetition of the statements in 1896 and 1904, and at other times, was not an act tending to conceal the fraud alleged to have been committed in 1893.

The appellant suggests that each annual acceptance of the premium by the appellee was a continuance of the initial fraud. The case of *Schoolfield* v. *Prudential Saving Life Ins. Society*, 158 Ky. 687, answers this contention. That case was an action for fraudulent representations as to what the value of the plaintiff's policy would be at its maturity. In regard to the contention just referred to, the court said: "We do not think the payment of the annual

premiums had the effect of suspending the running of the statute as long as they were paid or until the company refused to perform the written contract as it was represented by the agent. It was the representations of the agent, and not the payment or receipt of the premiums, that constituted the fraud complained of. The premiums paid were those that the contract provided for, and the agent did not attempt to make any representations concerning them, except to say that if they were paid as stipulated in the written contract the insured would receive certain benefits in excess of those provided for in the written contract."

The replication did not state facts showing a fraudulent concealment by the defendant of the cause of action, and the demurrer to it was therefore properly sustained.

The judgment will be affirmed.  *Judgment affirmed.*

Mr. CHIEF JUSTICE FARMER, dissenting.