CHARLES J. HURLEY, Plaintiff-Appellee, *v.* FRONTIER FORD MOTORS, INC., Defendant-Appellant.

(No. 72-117;

Second District—July 2, 1973.

*Rehearing denied August 7, 1973.*

Shultz, Fahy & Street, of Rockford, for appellant.

Berry & Simmons, of Rockford, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

Frontier Ford Motors, Inc., the defendant, appeals from an adverse judgment entered on a jury verdict awarding the plaintiff, Charles J. Hurley, damages of $3,600 and costs in a suit arising from the sale of

a used car. Defendant claims that the court erred in denying a motion to strike portions of Count II of the third amended complaint; in admitting certain parol evidence at trial; in refusing to direct a verdict at the close of plaintiff's case; and in refusing to submit special interrogatories tendered by the defendant. Defendant further contends that the amount of the verdict is not related to the evidence bearing on damages. Defendant asks that we enter judgment in its favor or grant a new trial on Count II of the complaint and remand for a new trial on Count I of the complaint. Defendant does not request judgment be entered in its favor on Count I.

The complaint, as filed, essentially alleges that on April 26, 1969, plaintiff saw a 1964 Buick Riviera for sale at defendant's premises, priced at $1,895, that defendant's salesman and agent, Terry Day, represented that the car required repairs, consisting of installation of a manifold exhaust, muffler and tailpipe; *that Day concealed from plaintiff the fact that the car had been in a wreck which had caused the frame to be twisted, the shock absorbers torn loose, the exhaust system to be broken completely and the gas tank to be punctured; that plaintiff desired to examine the car but was refused the right* (emphasis added); that after some negotiation plaintiff and Day agreed that defendant would sell the Riviera in exchange for plaintiff's 1963 two-door Pontiac Catalina and $802.99 to be paid by plaintiff; that to induce the plaintiff to enter into the agreement, Day said that all of the repairs to the Buick would be made by defendant free of charge; that plaintiff entered into the agreement, paid the $802.99 and conveyed title to his car, but that when he came to pick up the Buick he was refused possession unless he would pay $110 in repairs.

The contract attached to the complaint contains in bold type on its face the provision: ALL USED CARS SOLD "AS IS" UNLESS OTHERWISE INDICATED HERE. Immediately below this disclaimer is the handwritten statement which plaintiff had initialed, "15% Discount Parts & Labor for 24 months otherwise as is". No specific reference to any exhaust, muffler or tailpipe repairs appears. The agreement also contains the provision that any warranties are either contained on the face of the document or in a separate written instrument, if any; that the entire agreement pertaining to the purchase is contained in the document; and that no other agreement, verbal understanding or promise is to be recognized.

On defendant's motion the court struck the allegations emphasized above. The motion stated that there was no allegation defendant knew of the information in question; and that even if the allegations were amended to include such knowledge, they would sound in fraud and be

irrelevant to plaintiff's action for breach of contract. Another reference to "fraud" was also stricken from the complaint:

Plaintiff added Count II as an amendment to the complaint. Count II, based on fraudulent concealment and fraudulent misrepresentation, was itself amended twice to read as material here:

"3. That the Buick Riviera automobile had been in a wreck which caused the frame to be twisted, the shock absorbers to be torn loose, the exhaust system to be broken completely and the gas tank to be punctured. These damages to the car were material. In order to repair them, a large expenditure of money was required. The damage to the frame could have affected the use of the automobile from that time on unless it were properly repaired.

4. The said Terry Day, the agent and servant of the defendant, *owed to the plaintiff the duty of disclosing truthfully the condition of the Buick Riviera automobile.* Terry Day either knew the automobile had suffered more extensive damage than he represented or *had he made an examination of the automobile he would have known that it had been damaged* to a greater extent than he represented.

5. The said Terry Day stated the Buick Riviera automobile only required a manifold exhaust and that the muffler and tail-pipes had to be installed, without making an examination of said automobile to determine whether it had been more seriously damaged. The damages which the automobile had suffered were material to the plaintiff's use and enjoyment of it and were more extensive than represented by the said Terry Day.

6. The plaintiff desired to examine the automobile but was refused the right to examine it.

7. After some negotiation the plaintiff, relying on the representation of Terry Day, the agent and servant of the defendant, agreed the defendant would sell the 1964 Buick Riviera automobile to the plaintiff, providing the plaintiff delivered title issued by the State of Illinois covering his 1963 Pontiac two-door Catalina Hardtop automobile and would pay the sum of $802.99. As a further inducement to the plaintiff to enter into said agreement, the agent of the defendant stated that all repairs which he had outlined as necessary; namely, the manifold exhaust and the muffler and tailpipes which had to be installed, would be made free of charge to the plaintiff by the defendant corporation." (Emphasis added.)

Defendant moved to strike the emphasized portions of the above

pleading as conclusionary and insufficient to make out a cause of action for fraudulent concealment. The court denied the motion to strike, and we find no reversible error in this ruling.

■■ It is true that the allegation as to duty in paragraph 4 is conclusionary and surplusage. (*Darling v. Charleston Memorial Hospital* (1964), 50 Ill.App.2d 253, at 310, aff'd 33 Ill.2d 326.) However, since there are factual allegations sufficient to give rise to the duty of disclosure, the failure to strike the allegations as to duty is harmless. *Darling v. Charleston Memorial Hospital* (1964), 50 Ill.App.2d 253, 310-311; *Rowe v. Phillips* (1919), 214 Ill.App. 582, 586-7.

■■■ As to the other portion of paragraph 4 objected to, we need not consider whether there is a cause of action in fraud for concealment or nondisclosure recklessly made, since plaintiff's case is predicated also on acts of affirmative misrepresentation as to the condition of the Buick. It is well established that if a person recklessly makes false representations of a matter about which he has no knowledge, for the fraudulent purpose of inducing another to rely upon his statements, to make a contract to his prejudice and damage, the party making the representations is legally liable. *McMeen v. Whipple* (1961), 23 Ill.2d 352, 355.

At trial, plaintiff's testimony as to the transaction was essentially as pleaded. He stated that one of defendant's salesmen informed him that the car could not be driven on the streets because of a defective muffler, which became evident when the car was started, and that there was no room to drive the automobile at Frontier Ford. Plaintiff further testified that the salesman told him the car was in good shape or good condition. A discussion then ensued about the cost of the car, particularly about who would pay for the cost of repairs to the exhaust system. Plaintiff said that the agreement to be written up was $750, plus his 1963 Pontiac in trade, and that Frontier was to pay for the cost of repairs to the exhaust system. Plaintiff then signed, and in four different places initialed, a written sales agreement concerning the Buick. Plaintiff testified that he did not read the contract.

Plaintiff further testified that after signing the agreement he gave Frontier his car and $802.99, negotiated titles, and was then given the use of a demonstrator while the Buick was being repaired; but that when he returned to pick up the Buick he was presented with a $110 bill for repairing the exhaust system, which apparently included a 15% discount. He refused to pay the bill and demanded his old car and money back but was refused.

There was also testimony by the prior owner of the Riviera that he had hit a cement curb with the car, tearing loose the exhaust system and a shock absorber, but not damaging the frame; that shortly there-

after he traded the car in at Frontier Ford. He stated he did not tell anyone at Frontier Ford that the car had struck the curb or what happened to the car as a result.

Witnesses for the defendant testified in substance that apart from the exhaust system the car was generally in very good condition, there was no frame damage, the shock absorbers were intact although they did not function as they should, a rear truss member had about $12 damage to it, and the gas tank had a minor dent in it which did not affect its operation or capacity. On cross-examination of one of defendant's witnesses there was testimony that there had been body work done to the car but this was not developed further.

The salesman involved, Terry Day, returned from Colorado to testify on behalf of Frontier Ford and controverted plaintiff's version of the transaction as to who was to pay for the cost of repairing the exhaust system. He also stated that he told plaintiff only what he knew about the car from its general appearance and that plaintiff drove the car on Frontier's property. He said that he did not know the car had previously been damaged in any way by an accident.

■■ Defendant argues that the court erroneously denied a directed verdict on Count II at the close of the plaintiff's case. From our examination of the testimony at trial, we must agree. The evidence adduced by plaintiff was insufficient to show a material misrepresentation as to the condition of the car. The only testimony adduced as to damage to the car was by the prior owner, and other than the exhaust system he testified only a shock absorber was torn loose. There was no evidence of frame damage and the accident was very minor. There was thus no material fact as to the car's condition either to be known and misrepresented or concealed. Plaintiff offered no evidence that the car was not in good condition when he purchased it, except for the items which were to be repaired and a shock absorber. Defendant's evidence that the car was otherwise in good condition was uncontradicted. Under these circumstances the verdict of the jury could not be supported if based on allegations of fraudulent concealment or misrepresentation as to the condition of the car.

There is, however, another aspect of the pleadings and of the proof which requires discussion. Count II of the complaint (par. 7), in addition to the allegations of fraudulent concealment and misrepresentation of the condition of the car also alleged that defendant's salesman agreed that Frontier Ford would pay for the repairs to the exhaust system which were disclosed as necessary. Defendant, citing the parol evidence rule, sought to bar plaintiff from introducing evidence that defendant's salesman, as an inducement to plaintiff to enter into the contract, had agreed

that defendant would pay for these repairs. At trial, the court permitted the evidence to go in, stating that it related to the second count of the complaint.[1] Plaintiff has argued here that this testimony was necessary to show that defendant's salesman did not inform plaintiff about the true condition of the car. However, as defendant points out it is undisputed that the salesman did not inform plaintiff of any defects other than those items being repaired. The evidence thus would have no bearing on the issue of fraudulent concealment. However, the allegation and supporting testimony that defendant's salesman stated defendant would bear the cost of repairs relates to a misrepresentation of a material matter which at first glance might support the jury's verdict on a theory of fraud and thus be provable by parol evidence. Further examination of this theory of recovery is therefore necessary.

■■ An initial question is raised whether plaintiff could be justified in relying upon the alleged misrepresentation as to the terms of the contract which he signed, additionally initialling the handwritten "as is" provision. One is ordinarily not justified in relying on a misrepresentation as to the terms of a contract he signs when he has been afforded the opportunity to read it but through his neglect fails to do so. (*Broberg v. Mann* (1965), 66 Ill.App.2d 134, 141; *Nathan v. Leopold* (1969), 108 Ill.App.2d 160, 171; *Dickinson v. Dickinson* (922), 305 Ill. 521, 527-528.) Because the term "as is" is easily understandable (Ill. Rev. Stat. 1971, ch. 26, par. 2—316(3)(a)), it may be appropriate to require very convincing proof of fraud before relief will be granted. (*Garofalo Co. v. St. Mary's Packing Co.* (1950), 339 Ill.App. 412, 417; Note, 1954 Ill. L.F. 665, 675). The evidence before us does not establish that plaintiff had a right to rely upon the alleged fraudulent misrepresentations by defendant that it would pay the cost of the repairs.

■■ In addition, a further bar to the proof of fraud as to who would bear the cost of repairs is found in the nature of the representation allegedly relied upon. A misrepresentation as to a future promise or intent, rather than a present condition or a past act, cannot sustain an action for fraud. (*Grubb v. Milan* (1911), 249 Ill. 456, 463; *John N. Benedict Co. v. McKeage* (1922), 195 N.Y.S. 228, 230.) While in many jurisdictions there has been engrafted upon this rule the exception that if one who makes the future promise has no present intention to perform, an action for fraud will lie, this position has been rejected in Illinois. *Metropolitan San. Dist. v. Pontarelli & Sons, Inc.* (1972), 7

---

[1] Count I as amended appears to have been treated both by the parties and by the court as sounding in contract rather than in fraud. In this view, the evidence of prior negotiations could not properly be introduced to alter the terms of the contract. Ill. Rev. Stat. 1971, ch. 26, par. 2—202.

Ill.App.3d 829, 841-2; *Grubb v. Milan* (1911), 249 Ill. 456, 463; *Miller v. Sutliff* (1909), 241 Ill. 521, 526—7.

The trial court erred in refusing to enter judgment for defendant on Count II as amended. The judgment is therefore vacated and judgment is entered here for defendant on Count II.

In accordance with defendant's prayer the cause is remanded for a new trial on Count I.

Reversed and remanded with directions.

GUILD, P. J., and T. MORAN, J., concur.