## Arminda C. Fry, Appellee, v. Homer G. Howard, Appellant.

### Gen. No. 28,101.

1. FRAUD AND DECEIT—*evidence as to agency.* In an action for damages for fraud and deceit arising out of an exchange of real property and predicated upon the fraudulent concealment by defendant of the existence of rebate agreements between himself and the tenants in the apartment building which he traded to plaintiff for other properties, a third person with whom plaintiff first negotiated is shown to have been the agent of the defendant so that his knowledge of the rebate agreements is not chargeable to plaintiff, where defendant took up the negotiation in person and represented to plaintiff that the third person was acting as agent and that he would back him in all his statements and that the contract of exchange inferentially disclosed that such third person was agent and it appears that defendant paid him a commission for making the exchange.

2. FRAUD AND DECEIT—*evidence of plaintiff's knowledge of fraud.* In an action for damages for fraud and deceit arising out of an exchange of real properties and predicated on the fraudulent concealment by defendant that he had given tenants of his property rebate agreements so that the actual rental was materially less than represented to plaintiff, the latter is not shown to have had knowledge of the rebate agreements by evidence that she inspected the premises, examined the leases and interviewed the tenants and that she had been told by a third person that concessions had been made, where such statement is denied by her and there is no evidence that any mention was made of the rebates as such or that she was told what the concessions were.

3. FRAUD AND DECEIT—*evidence of diligence to ascertain the truth of representations.* In an action for damages for fraud and deceit predicated upon the concealment by defendant in making an exchange of property with plaintiff of the existence of rebate agreements with defendant's tenants, no want of diligence by plaintiff to ascertain the truth as to the actual rental paid by the tenants before negotiating the exchange is shown where the evidence shows that the leases were silent as to the rebates which were contained in separate agreements, that plaintiff demanded the leases and examined them but that no mention was made by defendant of the rebate agreements which were not submitted to plaintiff and there is no evidence that plaintiff had any knowledge of any fact or circumstance tending to show their existence.

4. FRAUD AND DECEIT—*representation as to present annual rental*

*as actionable fraud.* A representation made by the owner of an apartment house as an inducement for the exchange of property that the annual gross rental therefrom is a specific sum as shown by the leases of the property is a representation as to a matter of fact and not a mere opinion of value where the evidence shows that defendant specifically stated that the rental was a certain figure when as a matter of fact by reason of secret rebate agreements it was substantially less, especially where it appears that the plaintiff was influenced to make the exchange by her reliance upon the statement of rental income made.

5. FRAUD AND DECEIT—*correctness of instruction.* An instruction in a fraud and deceit action is not erroneous as referring to a misrepresentation of a fact without stating that what was meant was a material fact where the instruction further stated that it must be such a fact as being relied upon the plaintiff "suffered damage therefrom."

6. HARMLESS AND PREJUDICIAL ERROR—*when error in instruction not prejudicial.* Alleged error in an instruction is not prejudicial to a defendant where it states the principle involved more favorably to the defendant than to the plaintiff and is a correct statement of the law.

7. DAMAGES—*measure in action for fraud inducing an exchange of property.* In an action for damages for fraud and deceit predicated upon fraudulent representations as to the annual rental of the property exchanged for that of plaintiff's, the proper measure of damages is the difference between the fair market cash value of the property conveyed to plaintiff as it was on the day of the exchange and the fair market cash value of the property on the same day as it would have been if the gross yearly rental therefrom had been in fact the amount stated by the defendant.

8. FRAUD AND DECEIT—*admissibility of records and decree in other action.* In an action for damages for fraud and deceit, it was not error to exclude from evidence certain records and a decree in a previous suit apparently involving the same property collaterally and in which the parties to the instant suit were parties where nothing is shown to have been done in the prior suit which adjudicated any matters involved in the instant case or connected therewith.

Appeal by defendant from the Superior Court of Cook county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Affirmed. Opinion filed February 27, 1924.

HENRY M. HAGAN, for appellant; A. J. BECK, of counsel.

NORTHUP, FAIRBANK & KLEIN, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

This is an action of trespass on the case by the plaintiff, Arminda C. Fry, against the defendant, Homer G. Howard, for fraud and deceit. It was alleged by the plaintiff that in exchanging certain real estate which she owned for certain real estate which the defendant owned, he deceived her in regard to the annual gross rental of the property which he was exchanging, so that in making the exchange she thereby suffered damages to the extent of $25,000. There was a trial with a jury and a verdict and judgment for the plaintiff in the sum of $3,750. This appeal is therefrom.

The declaration alleges that the defendant falsely, fraudulently and deceitfully stated and represented to the plaintiff that the gross rental of the premises which he contracted with her to exchange for certain property of hers was $10,860 a year, whereas, it was not over $9,200 a year; that prior to making the contract in exchange, the defendant had leased certain apartments in his building and arranged by collateral agreements with the tenants to accept as rent a smaller amount than was set forth in their leases; that the defendant exhibited to the plaintiff the leases with the tenants, but deceitfully represented to her that there were no collateral agreements providing for rebates; that by reason of the collateral agreements with the tenants, the gross yearly rental of the premises was not more than $9,200, instead of being $10,860, as represented to her by the defendant; that the premises were worth $25,000 less than they would have been worth had the statements and representations of the defendant concerning the yearly gross rental been true; that the defendant knew the situation as to the rents at the time he made the misrepresentations to her; that she, the plaintiff, did not know

the facts and had no means of finding them out, and relied upon the statements and representations of the defendant, believing and supposing them to be true. The *ad damnum* is $25,000.

Other counts of the declaration and various pleas by the defendant were filed, but in view of the evidence that was introduced and as they are voluminous, it is unnecessary here to set them forth.

It is the theory of the plaintiff that in exchanging her property for that of the defendant he made wilful misrepresentations as to the rents which the tenants in his building were paying; that he represented the gross annual rentals to be $10,860, when at the time they were not over $9,200; that she was not able, by reasonable effort under the circumstances, to ascertain the truth, and believed and relied upon what he said, to her damage. On the other hand, it is the theory of the defendant that "there is no evidence of any kind showing or tending to show, that Howard ever consciously made any express misrepresentations to the plaintiff either before or after the contract was entered into, or that he engaged in any conduct deceiving or misleading to the plaintiff"; also, that if he did make the misrepresentation charged, it was as to the value of the property and so not actionable.

In 1913, the plaintiff, Arminda C. Fry, a physician and surgeon, a graduate of the State University of Iowa, came to Chicago from Marshalltown, Iowa, to practice her profession. At that time she owned a building in Marshalltown, and also some acre property in North Dakota. The defendant, Homer G. Howard, living in Chicago, was a member of the firm of Howard Brothers Company, and had been in the real estate business for a good many years. In the early part of September, 1915, the plaintiff began negotiations for exchange of her properties for the property of the defendant, a twelve-apartment building, known as the Arlington Apartments, in Chicago. On

September 21, 1915, a written contract of exchange for their respective properties was entered into between the plaintiff and the defendant. That contract was signed by both parties. When signed it was left in escrow at the Foreman Brothers Bank. The contract of exchange concerning the property which the defendant was to convey to the plaintiff contained the following language: "It is a part of this contract that the gross rental of the above described property is $10,800 yearly, and if not such amount this contract can, at the option of the party of the second part (meaning the plaintiff) be canceled." It also provided that "brokerage fees or commission shall be paid to A. M. Johnson by" the defendant, and that the plaintiff "is to pay no commission as heretofore agreed by the respective parties." The contract also recited that the Arlington Apartments were incumbered at the time of the exchange for $52,000. The deed to the Arlington Apartments to the plaintiff was made by the defendant through one Florence M. Moore, on September 27, 1915, and was recorded October 5, 1915. It recited a consideration of $80,000, and the incumbrance of $52,500. The plaintiff's property was conveyed to Albert M. Johnson for the defendant, at the defendant's request. On September 12, as the defendant had promised to pay $2,000 for the retirement of bonds due in 1917 on a first mortgage loan on the Arlington Apartments, the plaintiff assigned to him the rents of the building in question, over and above current expenses, and also agreed to pay him the sum of $100 a month out of the rents, apparently, for managing the property. It was provided that the assignment should be in effect until the defendant had received the amount of money paid by him for the purposes above mentioned.

As to the negotiations which took place between the plaintiff and the defendant in September, 1915, prior to the execution of the exchange contract, the plaintiff stated that her first talk about the property

was with one Johnson; that later she began her dealings directly with the defendant. She testified that she asked the defendant to verify the statements that Johnson made to her concerning the property, and "if Johnson's representations as to the mortgages and leases being bona fide were correct"; that defendant told her that "Johnson was acting as the agent for the purpose of selling that building; and that everything he, Johnson, had mentioned" he would back him in; "that she asked the defendant if he had the leases, that she told him before she went into the contract she desired to see the leases"; that she "wanted to know their contents and wanted to know the amount they represented; that he said he had them and he would send them to me;" that he would send a certain paper over to her by Johnson, which he did. The defendant then sent to her the leases which she had requested. They were regular in form and did not show anything concerning rebates or concessions. She testified further that in a telephone conversation with the defendant, in which she inquired about three vacant apartments, "he said that there were three flats that were unoccupied, two of which he had leases made out for, but were unsigned on account of his looking up the financial standing of the tenants   *   *   *   just as soon as he had finished that, they would be signed up," and that she could see them; that he said those flats would rent for $75. The leases of the various tenants were offered in evidence, and also a statement dated October 5, 1915, made out by the defendant, which showed a total monthly rental of $680. That amount, together with $75 a month on the two vacant flats for which the defendant said leases had been agreed upon, together with an allowance of $75 for the flat to be occupied by the plaintiff, amounted to $905 per month, or $10,860 per year. That showed to the plaintiff that the gross yearly rental would amount to $10,860 per year, and was in accordance with the provision in the

contract of exchange that the gross annual rental was $10,860 yearly. The defendant, pursuant to the agreement made with the plaintiff, undertook to manage the property, the Arlington Apartments, for her, and to remit to her the rents, rendering monthly statements therewith. The statements that he rendered her, however, accounted for the full amount of gross rentals as provided for in the contract of exchange and as shown by the actual phraseology of the leases themselves, and, therefore, tended to keep her in ignorance of the fact that, in reality, he had made secret rebate agreements with certain of the tenants, and that the actual gross rentals were not $10,860 a year, but approximately $9,200 a year. The plaintiff testified that, through one of her tenants, Roy Smith, in January, 1916, she found out the leases of the tenants were padded; that she thereupon made some investigation; that she called up the defendant and told him that she had discovered that her leases were padded and that she was dissatisfied; that the defendant said, "Why, you knew that they were padded, Mr. Johnson did"; that she answered, "Had I known they were padded I never would have purchased the building"; that she told him that she "was going to sue him about the padding of the leases"; that he asked her to go down to his office; that she asked him to give her her property back that she was dissatisfied, and "he said it couldn't be done. The property was sold, and he said if I would just wait he would sell the building for me."

In one of the pleas filed by the defendant in this action, it is stated that the plaintiff is not entitled to maintain her suit because "he says that at or before the time of the making of the contract mentioned in plaintiff's declaration aforesaid, he disclosed to plaintiff that the net gross rental of the premises * * * was not $10,800 yearly, and that the gross rental of said premises was not over, to-wit, $9,200."

There were introduced in evidence copies of rebate

agreements which had been made by the defendant with certain tenants of the premises in question. One, for example, which was made to a tenant named Graham for an apartment on the first floor of the building, provided that the tenant would be allowed "a rebate of twelve 50/100 ($12.50) dollars on each month's rent, or the proportion of any month thereof, during the term of said lease." Six of the tenants testified that they had typewritten rebate agreements similar to the one just mentioned. The evidence shows that the defendant allowed to or paid to the tenants the rebates agreed upon.

It is contended, on behalf of the defendant, that one Johnson, who took part in the negotiations which culminated in the exchange contract, was a mere go-between, and not the agent of either party, and that he knew the leases were padded and that she was bound by his knowledge. The evidence, however, is quite sufficient to justify the conclusion that Johnson was the agent of the defendant and acted throughout for him. The plaintiff testified that the defendant said that Johnson was acting as his agent, and, further, the contract itself provided that the commission should be paid to Johnson by the defendant, and the evidence, also, shows that the defendant did actually pay Johnson a commission amounting approximately to $1,500. With the evidence in the record, we are not entitled to say that the jury were justified in believing that she did know of the padded leases when the contract of exchange was made.

It is further contended for the defendant that, not only did the plaintiff inspect the premises and examine the leases and interview tenants, but that she had been told of the concessions made to tenants by one Savoire before the contract of exchange was made. The testimony of Savoire was to the effect that he, together with Johnson, saw the plaintiff at about the time of the exchange of the building, or shortly prior thereto, and that the renting of the premises was dis-

cussed, and that he said "there had been concessions made." When asked whether he told the plaintiff anything about the slips, that is the rebate agreements, he said that he did not, and that he could not say, as far as he knew, that she knew anything about them. The plaintiff denied that he said anything to her about rebates. It would seem, therefore, that there was a conflict on that subject, and there is nothing in the record that shows that the jury were not justified in believing the evidence of the plaintiff that she had no knowledge prior to the execution of the contract as to rebates and concessions. It is claimed for the defendant, that the plaintiff if diligent would have obtained knowledge of the rebates and concessions. It is true that extreme diligence may unearth the truth in nearly every case, but the law does not require more than that which is reasonable under the circumstances. Here, we think the jury may well have believed that the conduct of the plaintiff was fully that of ordinary, if not somewhat unusual, care in endeavoring to discover the exact state of the leases on the premises. Surely, when the plaintiff was given the leases themselves and they were silent as to rebates, she was entitled to assume they showed the whole truth, and were not merely part of the evidence of the obligations of the tenants.

In our opinion, the evidence shows a plain case of fraud and deceit. The defendant did not merely lie by, or remain silent, or take a negative position which might give rise merely to something in the nature of an estoppel, and which would be unavailing as a basis for an action of fraud and deceit. But he, wittingly, concealed material facts, and with the obvious intention of deceiving plaintiff, to her detriment, and, we think, according to the evidence, succeeded in his purpose. The evidence of the plaintiff shows that she expressly requested that she be allowed to see the actual leases made to the tenants in possession, and that they were sent to her by the defendant, but without—and

that is the significant fact—either the contracts for rebate or concessions, made by the defendant with the tenants, or any word or information on that subject.

Assuming, therefore, as we do, that the leases were padded, and that they were padded for the purpose of deceiving the plaintiff as to the then rental of the building; that she had no knowledge that the leases were padded, and that secret rebate agreements had been made by the defendant between the defendant and the tenants, and had no reasonable way of obtaining that knowledge; that she had relied upon the gross rental of the building being $10,860, as corroborated by the leases which she requested the defendant to send to her, and which he did send to her, and which she presumably examined, there remain to be considered the contentions of counsel for the defendant that such misrepresentation as to the value of the property or the subject-matter of the transaction will not support an action of fraud and deceit; and that statements as to value are regarded as mere opinion, and a party, in the absence of a fiduciary relation, is not justified in relying thereon.

The representation of the plaintiff that the annual gross rental was $10,860, when as a matter of fact it was not over $9,200, purported to be a representation concerning an existing state of facts. In *Grubb v. Milan,* 249 Ill. 456, Mr. Justice Cartwright said: "If an action is for fraud and deceit, the fraud and deceitful representation must be concerning an existing fact or facts." In *Potter v. Potter,* 65 Ill. App. 74, where the plaintiff proved that the defendant sold him a one-third interest in a patented fence post and represented that he had already made certain sales for $2,000, of which the plaintiff was to have one-third, it was held that as the evidence sufficiently showed that no such sales had been made, that the defendant made the representations with the intent to mislead, and that the plaintiff relied upon the statements being true, and was thereby induced to buy an interest, the

Fry v. Howard, 232 Ill. App. 295.

verdict and judgment for the plaintiff should stand. The court there said:

"When, however, one knowingly makes an untrue statement with regard to anything then existing or having previously occurred, material to the matter in hand, and he to whom it is made, not knowing its untruth, relies upon it and sustains the damage, the person so making such false statement is liable for the damages accruing to the party injured. The ground of action is fraud and damage. There must be *scienter*, misrepresentation and consequent loss. As between vendor and vendee, false representations respecting mere value are not actionable; but when the vendor leaves the domain of judgment and opinion and falsely asserts a material fact, and induces reliance thereon by one without knowledge of the falsehood and without the present means or opportunity of investigation, and under circumstances justifying belief, he is liable for damages thereby occasioned." Citing *Ladd v. Pigott*, 114 Ill. 647; *Endsley v. Johns*, 120 Ill. 469.

In *Evans v. Gerry*, 174 Ill. 595, which was a bill for the specific performance of a contract for exchange of real property, and in which one of the parties claimed that the property she got was not worth as much as the other represented it to be, and that she relied on his representations, the court said: "This would not be a good defense. Mere matters of opinion, or expression of an opinion, by the owner of property as to its value, standing alone, will not be held to be a misrepresentation." Citing *Brady v. Cole*, 164 Ill. 116.

The subject of the defendant's deceit was the contractual relations that existed between the tenants and the owner at the time of the contract of exchange. Those contractual relations, being in the form of leases, are to some extent, at least, an element which is generally considered when the value of the property, as a whole, is being determined; and so it may be said, with proper qualification, that a misrepresentation as to the terms of a leasing is in reality one

concerning the value of the property. No case is cited, however, that supports the contention of counsel for the defendant that a misrepresentation as to the leasing is such a mere matter of opinion as to the value of the whole property, that it is negligible, and insufficient to sustain an action of deceit. In the instant case, to the mind of the plaintiff, the rental, as shown by the leases, without rebates, may have been important and persuasive, even apart from the consideration of other matters pertaining to the general value of the property itself. It is true, that in general a representation as to the value of property, or as to a price which the owner may have been offered, is not sufficient. In buying, or selling, or exchanging, generalizations as to value are not *ipso facto* actionable. The law recognizes that human nature is such that exaggeration where there is interest is somewhat to be expected, and therefore, as far as mere opinions and generalizations as to value are uttered, the participants are left to suffer the consequences, whatever they may be, of their own ignorance or imprudence. But here there was actual deceit in regard to a fact which was one of the essential elements of value, which distinguishes it from a case where mere general opinion of total value is expressed.

Quite similar to the instant case is that of *Ettlinger v. Weil*, 184 N. Y. 179. In that case a false representation had been made which placed the annual rental at $13,000 a year, when in truth it was only $10,500. A witness was asked his opinion of the value of the premises in June, 1898, "with a lease upon the store, basement and subbasement for two years at $13,000 per year—what was the fair market value?" and he answered, "$800,000," and the question and answer were held proper. The court said: "The measure of damages is the difference between the market value of the premises if they had been as represented and their actual market value. * * * It was necessary to make the situation as represented a

part of the inquiry in order to admeasure the damages at all, for the plaintiff, as the injured party, was entitled to the benefit of the bargain he supposed he was making.   There was no way to prove the damages sustained by him except by starting with the value of the premises if leased according to the representation.'' So here, the plaintiff was entitled to the benefit of the bargain she thought she was making, that is, with a rent roll at $10,860 per year instead of $9,200 per year. In our judgment, therefore, the concealment of the facts in regard to the rent, as that concealment was charged in the declaration and which charge the jury believed was true, was a tort, and actionable as such.

It is contended that the first instruction given for the plaintiff was erroneous, because it referred to a misrepresentation of a fact without stating that what was meant was a material fact.   The answer to that is that the instruction states that it must be such a fact as, being relied upon, she ''suffers damage thereby.'' That is sufficient to inform the jury as to its quality. It is also claimed that the first instruction is erroneous in the use of the words, ''or that which he has no good reason to believe is true.''   Those words were actually more favorable to the defendant than the plaintiff. The instruction recites that the representation must have been ''meant to be acted upon'' and that regardless of its truth it is acted upon to her hurt.   That is sufficient and in consonance with the law.   14 Am. & Eng. Encyc. of Law (2nd Ed.), p. 86.

It is contended that instruction numbered 3 is erroneous.   That instruction describes the measure of damages as ''the difference, if any, which existed on September 21, 1915, between the fair market cash value of the property to be conveyed to the plaintiff as it then was and the fair market cash value of the same property, as it would have been if the gross yearly rental thereon had in fact at that time been $10,860.'' In *N. C. Antle & Bro. v. Sexton,* 137 Ill. 410, the court approved the following language:

"In cases of fraudulent representations of the quality or quantity of property sold, the general rule of damages is the difference between the value of property as it is and what it would be worth if the representations had been true."

The standard of measurement in the instruction, like the question in the *Ettlinger* case, *supra,* does not involve rental value only, but, also, all the other elements that go to make up real estate value. The objection is, therefore, untenable.

It is contended that the court erred in refusing to admit in evidence certain records and a decree in a suit of *Gamm v. Moore, Fry et al.,* Gen No. 338480, in the superior court. That case, apparently, was a bill by Gamm against Moore to foreclose a second trust deed given to secure a loan of $7,500, in which there was a final decree for foreclosure; but, although Arminda C. Fry was a party and filed a cross-bill against Howard, nothing is shown to have been done in that case that in any way adjudicated the matters involved here in the instant case, and, accordingly, the court properly rejected the proffered evidence.

In conclusion, considering that the fraud and deceit consisted in the wilful concealment, to the plaintiff's detriment, that the gross annual rentals were $1,660 less than they actually were, and that the verdict of the jury was $3,750, we do not feel that we are justified in questioning the justice of the judgment. The judgment therefore will be affirmed.

*Affirmed.*

O'CONNOR, J., and THOMSON, J., concur.